**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NELCY MABEL GARCIA DE LEÓN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>NEW YORK UNIVERSITY,<br><br>    Defendant. | **Case No. 1:21-cv-5005**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Nelcy Mabel Garcia De León ("Plaintiff"), by and through undersigned counsel, brings this action against New York University ("Defendant" or the "University") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds or adjustments for the Spring 2020 semester after cancelling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students to leave campus as a result of the Novel Coronavirus Disease ("COVID-19").

2.      This decision deprived Plaintiff and other members of the Classes (hereinafter defined) from recognizing the benefits of enrollment in an on-campus degree program, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.      Defendant has either refused to provide reimbursement for the tuition, fees, and other costs for access and services that Defendant failed to provide during the Spring 2020

semester, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4.    This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

**PARTIES**

5.    Defendant New York University is a tax-exempt not-for-profit entity organized under the laws of the State of New York with a principal place of business in New York City.

6.    Defendant manages its own assets, sets its own tuition and fees, directs its own fiscal policy, and otherwise is responsible for the acts and omissions set forth in this Complaint.

7.    Upon information and belief, Defendant has an estimated endowment of approximately $4.7 Billion and more than 50,000 enrolled students during the 2019-2020 academic year.[1]

8.    According to Defendant's website, Defendant received $25,626,944 in federal stimulus under the 2020 CARES Act.[2]

9.    Plaintiff Nelcy Mabel Garcia De León is an individual and a resident of the State of New York.

10.    At all relevant times, Ms. Garcia De León was a full-time graduate student enrolled at New York University and was charged tuition and fees by Defendant for the Spring 2020 semester.

---

[1] https://www.nyu.edu/content/dam/nyu/investmentOffice/documents/2020-08-31%20NYU%20Endowment%20Fact%20Sheet.pdf
[2] https://www.insidehighered.com/news/2020/04/10/listing-funds-each-college-can-expect-receive-under-federal-stimulus

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant because it is organized under New York law, maintains its principal place of business in this district, regularly and systematically transacts business in this district, and the wrongful conduct complained of in this Complaint occurred in this district.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the Complaint occurred in this district, and Defendant is subject to personal jurisdiction in this district.

**BACKGROUND FACTS**

14.     At all relevant times, Plaintiff was enrolled as a full-time student at Defendant's University.

15.     Plaintiff was enrolled at Defendant New York University prior to the Spring 2020 semester.

16.      As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (hereinafter defined).

17.     There are hundreds, if not thousands, of institutions of higher learning in this country.  Each institution markets and offers different and competing educational products.

18.     Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.  These products are significantly cheaper than competing in-person product offerings.

19.     Defendant's institution markets, offers, and promises an in-person, hands-on program – complete with access to its campus facilities and services.

20.     Plaintiff and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically chose to enroll in the on-campus product and paid tuition and fees on that basis.

21.     Defendant has recognized that the on-campus student life experience is a vital part of the on-campus product that it sells:[3]

## Thousands Of Courses At Your Fingertips

At NYU, New York City is your classroom. Your economics class might take a trip to Wall Street to meet with business leaders and see the trading floor, or your art history professor might hold class at the Metropolitan Museum of Art. The countless opportunities at NYU are inextricably linked to the infinite possibilities of New York City.

22.     At all relevant times, Defendant marketed its on-campus program to current and prospective students as "a prominent research university that is 'in and of the city'".[4]

---

[3] http://web.archive.org/web/20191016143458/https://www.nyu.edu/admissions/visiting-students/academics.html

[4] http://web.archive.org/web/20191002053259/http://www.nyu.edu/about/university-initiatives.html

> New York University has grown into one of the nation's
> leading institutions of higher education, a dynamic and
> prominent research university that is "in and of the city"
> with an academic presence that spans the globe.

23.     In order to maintain its status as a dynamic and prominent research university,

Defendant promises Plaintiff and members of the putative classes the support and resources to

thrive in its dynamic learning environment in New York City.

# Redefining Success

At NYU, student success is both an ethos and an office. We are here to deliver on the
promise that all students will have the support and resources they need to thrive in this
dynamic learning environment. Partnering with leaders from Academic Affairs, Student
Affairs, and Enrollment Management, we inform and shape factors that positively affect
retention, graduation, and the overall student experience.

24.     Defendant explains to prospective students some of the benefits it promises its

students and that only NYU students can experience.[5]

---

[5] http://web.archive.org/web/20190903011825/http://www.nyu.edu/admissions/visiting-students.html

## Study At NYU: Every Season, For Any Reason

NYU welcomes visiting students all year round. Are you ready for the NYU experience? As a visiting student, you get the best of all that NYU has to offer: You can choose from thousands of courses and explore New York City like only an NYU student can. You can take intensive courses during our Summer and January sessions, or come for a full semester in the Fall or Spring. You can even study abroad at one of NYU's global centers over the summer. See the dates below to start planning your time as an NYU student.

## New York City Is Your Campus

Outside of class, you'll have the whole city to discover, and being an NYU student comes with benefits: steep discounts to Broadway shows, sporting events, and concerts, and free or discounted access to dozens of the city's finest museums.

25.     According to Defendant, NYU students have the several on-campus benefits, including, "access to NYU's recreation centers, libraries, and student clubs and activities."[6]

---

[6] http://web.archive.org/web/20190916155438/http://www.nyu.edu/admissions/visiting-students/life-at-nyu.html

# Make New York City Your Campus

As a visiting student at NYU, you have all the on-campus benefits of being an NYU student, including access to NYU's recreation centers, libraries, and student clubs and activities. Your benefits extend beyond campus to discounted tickets to Broadway Shows, Knicks games, concerts at Madison Square Garden, and museums like the Guggenheim and the Museum of Modern Art, to name just a few. Start exploring the resources below to shape your NYU experience.

26.     Additionally, Defendant promises its students special access by way of on-campus attendance via its website:[7]

### Featured Resources
## On Campus and Beyond

Visit free museums around the city, get administrative help from a StudentLink expert, become involved on campus, or make time to relax during free yoga and meditation

---

[7] http://web.archive.org/web/20190812232158/http://www.nyu.edu/students.html



## Museum Gateway for Students

NYU's Museum Gateway gives students free admission to
some of New York City's best cultural institutions. Enjoy
*freeseums* simply by showing your NYUCard at the locations
listed below. Please note that the list is subject to change
throughout the semester.

27.     Defendants further implored students to

"[e]xperience college life in New York City! Fall in New York allows students a
chance to experience academic life at New York University. Enroll in courses with
NYU students to enhance your current studies or explore a new subject. Outside of
your classes, experience all that New York City has to offer and enjoy benefits
available to all NYU students—recreation centers, libraries, student activities, and
student discounts for New York attractions such as Broadway shows, sporting
events, concerts, and museums."[8]

28.     Defendant further acknowledged the crucial importance and benefit of on-campus

residential and recreational facilities to the student experience in the "Spring at Tisch" program,

noting that students "will be immersed in one full-time semester of courses in emerging media or

the cinematic and performing arts. The professional training coupled with the cultural and

educational resources of New York City will undoubtedly give you the confidence and experience

to advance your creative career."[9]

---

[8] https://web.archive.org/web/20190819235938if_/http://www.nyu.edu/admissions/visiting-students/academics/fall.html
[9] https://web.archive.org/web/20190819235945/http://www.nyu.edu/admissions/visiting-

29.     Defendant further promises that students' experiences would be "enhanced by attending readings, lectures, and discussions led by New York City-based writers and publishing professionals, and class trips and cultural activities [will] provide context and inspiration for your writing."[10]

30.     Furthermore, Defendant touts in-person learning as the essential part of its "Cultural Capital" program, stating that "[t]hese city-specific courses at the Steinhardt School of Culture, Education, and Human Development examine how and why New York City has become a hub of media, creativity, and the business of culture. This program relies on getting out into the city, and you'll delve into everything from the phenomenon that is Times Square to the history of the Harlem Renaissance through site visits, guest lectures, and field research."[11]

31.     Defendant also promises a unique experience to prospective students by virtue of on-campus, in-person study:[12]

---

students/academics/spring.html
[10] *Id.*
[11] *Id.*
[12] http://web.archive.org/web/20190615030831/http://www.nyu.edu/admissions/undergraduate-admissions/life-at-nyu.html

## New York City: Snowball Fights, Apps, Strawberries

Are you kidding — it's New York City! Students here are having snowball fights in Washington Square. Developing apps for the Tech@NYU club. Trying to get up front at the Mystery Concert. Getting take-out of just about any type of cuisine imaginable. Putting on coat drives for New York Cares. And devouring cake at the annual Strawberry Festival. And that's just on campus. Students are also experiencing one of the world's great metropolises: New York City.



"There's no separation between you and the rest of the world. One second you're on campus, and five steps later, you're back in the city." — Josh, NYU student

# Community & Support

College is the time to try all the things. At NYU, you'll have access to the full college experience— from improv to intramurals, and even international scuba diving. Seriously.

32.     As an additional benefit to being able to access NYU's on-campus facilities and activities, students are promised the opportunity to study alongside students from all over the globe in NYU's residence halls, classrooms, or student centers.[13]

**Proudly Diverse**

Just like the home cities of our three campuses, NYU is a mosaic of different cultures. At any one moment, in any residence hall, classroom, or student center, people from every corner of the globe are creating together, exchanging ideas, and reinventing what it means to be a citizen of the world. Consider, for example, the abundance of viewpoints you'll learn from at NYU's campus in New York, where students represent every U.S. state and over 90 countries — the highest number of international students in America.

33.     Defendant promises its on-campus students a plethora of opportunities on each of its three campuses.[14]

**At NYU, There's No Excuse to Stay In**

Ever considered tapping into your inner actor by taking part in an improv competition in New York City? How about trying scuba diving in the Arabian Gulf? Do you want to perform one of your very own songs in a Shanghai coffeehouse? No matter what piques your interest, NYU's 300-plus student clubs and organizations have you covered. Not to mention our three campuses are based in global cities teeming with countless cultural, social, and physical activities. There's never a dull moment at NYU.

Since NYU has so much to offer outside the classroom, we created this handy guide. Start exploring:

---

[13] http://web.archive.org/web/20190615030833/https://www.nyu.edu/admissions/undergraduate-admissions/life-at-nyu.html

[14] http://web.archive.org/web/20190615041249if_/http://www.nyu.edu/admissions/undergraduate-admissions/life-at-nyu/campus-activities-and-resources.html

34.     Defendant also offers its on-campus students access to athletic facilities.[15]

### Work Out and Play at NYU

NYU offers three athletic facilities open to all students:

**404 Fitness**

Map of 404 Lafayette Street, New York, NY 10003

📍 404 Lafayette Street New York, NY 10003

- Strength training
- Cardio exercise
- Recreation classes

Hours and info »

**Palladium**

Map of 140 East 14th Street, New York, NY 10003

📍 140 East 14th Street New York, NY 10003

- Strength training
- Cardio exercise
- Recreation classes
- Swimming
- Basketball
- Volleyball

Hours and info »

**Brooklyn**

Map of 6 MetroTech Center, Brooklyn, NY 11201

📍 6 MetroTech Center Brooklyn, NY 11201

- Strength training
- Cardio exercise
- Recreation classes
- Basketball
- Volleyball

Hours and info »

35.     Accordingly, when students pay tuition in exchange for enrollment at Defendant's institution, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

- Face-to-face interaction with professors, mentors, and peers;

- Access to facilities such as computer labs, study rooms, laboratories, workshops, libraries, gymnasiums, athletic fields and facilities, etc.;

- Student governance and student unions;

- Extracurricular activities, groups, intramurals, etc.;

- Student performances, exhibitions, artwork, and other activities;

- Exposure to community members of diverse backgrounds, cultures, and schools of thought;

---

[15] http://web.archive.org/web/20190815185720/http://www.nyu.edu/students/getting-involved/clubs-and-organizations/athletics.html

- Social development and independence;

- Hands-on learning and experimentation; and

- Networking and mentorship opportunities.

36.     In addition to the broad-based mandatory fees, Defendant charges a myriad of other program or course specific fees, together with optional fees for additional services and activities.[16]

37.     Plaintiff and members of the Fees Class were required to and did pay all mandatory, program or course specific, and other fees associated with the Spring semester.

38.     As more fully set forth below, Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

39.     When this happened, Plaintiff was forced from campus and deprived of the benefit of the bargain for which she enrolled at the University, and in exchange for which Defendant had accepted, tuition and fees as set forth more fully herein.

40.     As a result of being denied access to the University campus, Plaintiff and members of the Proposed Classes (hereinafter defined) lost the benefit of on-campus educational instruction, facilities and services.

## FACTUAL ALLEGATIONS

41.     Upon information and belief, Defendant's Spring 2020 term began with the first day of classes on or about January 6, 2020.[17]

42.     Upon information and belief, Defendant's Spring 2020 term was scheduled to conclude with the last day of examinations on or about May 19, 2020 and commencement ceremonies on May 20, 2020.[18]

---

[16] For example, Plaintiff paid a $1,361 Social Work Graduate Regulation & Services Fee.
[17] https://www.nyu.edu/registrar/calendars/university-calendar-archive.html#1198
[18] *Id.*

43.     Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 134 days.

44.     However, as a result of the COVID-19 pandemic, Defendant announced on March 11, 2020, that it was immediately cancelling all university-sponsored events.

45.     That same date, Defendant announced that all in-person classes would move exclusively to online instruction.

46.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

47.     Defendant has refused, and continues to refuse, to offer any refund whatsoever with respect to the tuition that Plaintiff paid for the Spring 2020 semester.

48.     Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they paid, such as access to campus facilities, student activities, health services and other opportunities.

49.     Although Defendant offered some refunds for fees, the refunds issued were unfair, arbitrary, and wholly insufficient to justly and equitably compensate Plaintiff and others similarly situated.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester, but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

51.     Excluded from the Classes are New York University, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

52.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

53.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

54.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records.  Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

55.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

a.  Whether Defendant engaged in the conduct alleged herein;

b.  Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

c.  Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

d.  Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

e.  Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services, benefits and/or programs the fees were contracted to cover;

f.  Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

g.  Whether Defendant violated New York General Business Law § 349, § 350 et seq. as to Plaintiff and other members of the Tuition Class;

h.  Whether Defendant violated New York General Business Law § 349, § 350 et seq. as to Plaintiff and other members of the Fees Class;

i.  Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

j.  Whether Plaintiff and Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

k.  The amount and nature of relief to be awarded to Plaintiff and the other members of the Classes.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

56.  Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

57.  Plaintiff is an adequate representative for the Classes because her interests do not conflict with the interests of other members of the Classes she seeks to represent.  Plaintiff has retained counsel competent and experienced in complex, class action litigation and Plaintiff is committed to vigorously prosecuting the action and has the financial resources to do so.  The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

58.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

59.     Even if members of the Classes could afford individual litigation, the court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

60.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

61.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**

**(Plaintiff and Other Members of the Tuition Class)**

62.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

63.     Plaintiff brings this count on behalf of herself and the Tuition Class.

64.     Plaintiff and the other members of the Tuition Class entered into a contract with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to an on-campus degree program; granting them the full rights and privileges of student

status, including, but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom.

65.     The terms of this contract are expressly and/or implicitly set forth by Defendant through its website, academic catalogs, student handbooks, marketing materials and other circulars, bulletins, and publications as well as through the parties' course of dealings.

66.     These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

67.     Part of this bargain is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon.

68.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the University as opposed to other institutions of higher learning.  Defendant further utilizes these methods to persuade currently enrolled students to continue their enrollment at the University.

69.     Upon information and belief, when Plaintiff applied for admission to the University, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements that even referenced the possibility of in-person classes being changed to fully online classes for any reason whatsoever after the start of a given term.

70.     In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model.  This is evident from the

fact that the University hurriedly and ineffectively scrambled to make the switch, while acknowledging the significance and difficulty of the change.

71.     Based upon these advertisements and other promises and inducements made by Defendant, those prospective students who were interested in enrolling at the University after being solicited with the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

72.     Upon registration, students in many of Defendant's programs were subject to strict personal attendance requirements as set forth in various departmental policies and handbooks, evidencing Defendant's requirement, and the student's acceptance of the requirement, that such students physically attend such classes on campus.

73.     The fact that Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

74.     At all times relevant prior to March 11, 2020, Plaintiff expected to receive in-person instruction.

75.     Each day for the weeks and months leading up to March 11, 2020, students attended class in physical classrooms on campus to receive in-person instruction, and Defendant provided the same.

76.     Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

77.     Each day for the weeks and months prior to announced closures, students had access to the full campus.

78.     Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class applied for admission and accepted that offer by enrolling at the University, paying tuition, and attending classes prior to and during the beginning of the Spring 2020 semester.

79.     Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when their tuition was paid prior to the Spring 2020 semester, either out of pocket, by using student loan financing, or otherwise.

80.     However, Defendant breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and eliminating the on-campus experience without reducing or refunding tuition accordingly.

81.     Defendant failed to act fairly and in good faith in its contractual dealings with Plaintiff.

82.     The acts and omissions of Defendant described above also constitute a breach of the implied covenant of good faith and fair dealing.

83.     This cause of action does not seek to allege "academic malpractice."

84.     Rather, it is clear from the facts and circumstances that Defendant offered a specific product, that being live, in-person, on-campus education, with its featured ancillary and related services.

85.     Plaintiff and other members of the Tuition Class accepted Defendant's offer and enrolled at the University prior to the Spring 2020 semester for live in-person on-campus education and paid valuable consideration in exchange.

86.     However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already accepted and tendered valuable consideration, including, but not limited to, Plaintiff's choice of Defendant's institution for their degree program to the exclusion of other academic opportunities.

87.     Defendant charged and retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit and value of an on-campus academic education which they bargained for.

88.     Plaintiff Garcia De León paid tuition to Defendant for the Spring 2020 semester.

89.     Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

90.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, including, but not limited to, disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical classroom on a physical campus with all the attendant benefits for which they contracted.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Tuition Class)

91.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

92.     Plaintiff brings this count on behalf of herself and the Tuition Class.

93.     This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

94.     Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

95.     Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

96.     Defendant has realized this benefit by accepting such payment.

97.     However, Plaintiff and the Tuition Class did not receive the full benefit of their bargain.

98.     Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

99.     Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

100.     As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

101.    Simply put, it is significantly cheaper to operate a remote, online campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

102.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

103.    This is particularly true when Defendant is supported by a $4.7 Billion endowment.[19]

104.    At the same time, Defendant received $25,626,944 in federal stimulus under the 2020 CARES Act.[20]

105.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiff and Other Members of the Fees Class)

106.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

107.    Plaintiff brings this count on behalf of herself and the Fees Class.

108.    In addition to tuition, Defendant charges mandatory, campus-wide fees.

109.    In its publications and, particularly on its website and in its catalog, Defendant specifically describes the nature and purpose of the fees.

---

[19] https://www.nyu.edu/content/dam/nyu/investmentOffice/documents/2020-08-31%20NYU%20Endowment%20Fact%20Sheet.pdf
[20] https://www.insidehighered.com/news/2020/04/10/listing-funds-each-college-can-expect-receive-under-federal-stimulus

110.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards this fee were intended by both the students and Defendant to cover the services for which the fee was described and billed.

111.    Plaintiff Garcia De León paid fees for the Spring 2020 semester and the associated Registration and Services Fee.

112.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, benefits and/or programs related to those fees, as promised.

113.    It is undisputed that Defendant did not provide student activities, on-campus computer or lab facilities, access to recreational facilities, access to campus events, any student activities, or any student health and treatment services for a portion of the Spring 2020 semester.

114.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when their fees were paid, either by paying out of pocket, by using student loan financing, or otherwise.

115.    However, Defendant breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

116.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has not performed its contractual obligations.

117.    Defendant failed to act fairly and in good faith in its contractual dealings with Plaintiff.

118.    The acts and omissions of Defendant described above also constitute a breach of the implied covenant of good faith and fair dealing.

119.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the benefits, services and/or programs the fees were intended to cover.

120.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, including, but not limited to, disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT

### (Plaintiff and Other Members of the Fees Class)

121.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

122.    Plaintiff brings this count on behalf of herself and the Fees Class.

123.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

124.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

125.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus benefits, access and services and did not receive the full benefit of the bargain.

126.    Plaintiff and the Fees Class conferred this benefit on Defendant when they paid the fees.

127.    Defendant realized this benefit by accepting such payment.

128.    Defendant has retained this benefit, even though Defendant has failed to provide the services, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

129.    As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

130.    Simply put, it is significantly cheaper to operate a remote, online campus than a fully open physical campus.

131.    Equity and good conscience require that Defendant return a *pro-rata* portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

132.    This is particularly true when Defendant is supported by a $4.7 Billion endowment.[21]

133.    At the same time, Defendant received $25,626,944 in federal stimulus under the 2020 CARES Act.[22]

---

[21] https://www.nyu.edu/content/dam/nyu/investmentOffice/documents/2020-08-31%20NYU%20Endowment%20Fact%20Sheet.pdf (Last Accessed May 11, 2021).
[22] https://www.insidehighered.com/news/2020/04/10/listing-funds-each-college-can-expect-receive-under-federal-stimulus (Last Accessed May 11, 2021).

134.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A FIFTH COLLECTIVE CAUSE OF ACTION**
**VIOLATIONS OF NY GENERAL BUSINESS LAW §§ 349**

**(Plaintiff and All Classes)**

135.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

136.    Plaintiff brings this count on behalf of herself and other members of the Tuition and Fees Classes.

137.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . ."

138.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and members of the Proposed Classes seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing and promoting, *inter alia*, its on-campus product.

139.    Defendant misleadingly, inaccurately and deceptively advertised and continues to advertise and market its on-campus product.

140.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the other members of the Tuition and Fees Classes to purchase and pay a premium for Defendant's on-campus product when they otherwise would not

have.  Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.[23]

141.    Plaintiff and the members of the Classes have been injured inasmuch as they paid a premium for products that were contrary to Defendant's representations.  Accordingly, Plaintiff and the members of the Classes received less than what they bargained and/or paid for.

142.    Defendant's advertising induced Plaintiff and the members of the Classes to buy Defendant's on-campus product and to pay a premium price for them.

143.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the members of the Classes have been damaged thereby.

144.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and members of the Classes are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest and attorneys' fees and costs.

---

[23] The inquiry regarding whether an act or practice is materially misleading is whether, objectively, Defendant's acts are "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *See Duran v. Henkel of America, Inc.*, 2020 WL 1503456, at *4 (S.D.N.Y. Mar. 30, 2020).  GBL § 349 does not require a deceptive practice to "reach the level of common law fraud to be actionable," nor does it require proof of reliance.  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 896 (2000).  Fraudulent intent is not required, the material must only be misleading.  *Chais v Technical Career Insts.*, 2002 N.Y. Misc. LEXIS 2086, 2002 NY Slip Op 30082[U], at *16 (Sup. Ct., NY Cty Mar. 1 2002);

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION
## VIOLATIONS OF NY GENERAL BUSINESS LAW §§ 350

### (Plaintiff and All Classes)

145.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

146.   Plaintiff brings this count on behalf of herself and other members of the Tuition and Fees Classes.

147.   N.Y. Gen. Bus. Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

148.   N.Y. Gen. Bus. Law § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual . . .

149.   Defendant's advertisements contain untrue and materially misleading statements concerning Defendant's on-campus product inasmuch as they misrepresent the on-campus product.

150.   Plaintiff and the members of the Classes have been injured inasmuch as they relied upon the labeling and advertising and paid a premium for the on-campus education which was contrary to Defendant's representations.  Accordingly, Plaintiff and the members of the Classes received less than what they bargained and/or paid for.

151.    Defendant's advertising and labeling induced the Plaintiff and the members of the Classes to buy Defendant's on-campus product.

152.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly and with reckless disregard for the truth.

153.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

154.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising of its on-campus product.

155.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the on-campus product were and continue to be exposed to Defendant's material misrepresentations.

156.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the members of the Classes are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of other members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

D. Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

E. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

F. Scheduling a trial by jury in this action;

G. Awarding Plaintiff's reasonable attorneys' fees, costs and expenses, as permitted by law;

H. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I. Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated:  June 7, 2021

[signature page on following page]

**TOPTANI LAW PLLC**

*/s/ Edward Toptani*
Edward Toptani (ET6703)
375 Pearl Street, Suite 1410
New York, New York 10038
Tel: (212) 699-8930
Email: edward@toptanilaw.com

-and-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin (*Pro Hac Vice* Forthcoming)
Roy T. Willey, IV (*Pro Hac Vice*
Forthcoming)
Blake G. Abbott (*Pro Hac Vice*
Forthcoming)
Jarrett W. Withrow (*Pro Hac Vice*
Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: eric@akimlawfirm.com
       roy@akimlawfirm.com
       blake@akimlawfirm.com
       jarrett@akimlawfirm.com

**ATTORNEYS  FOR  PLAINTIFF  AND
THE PROPOSED CLASSES**