UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/20/2022
```

NELCY MABEL GARCIA DE LEÓN,
individually and on behalf of all others
similarly situated,

Plaintiff,

   -against-

NEW YORK UNIVERSITY,

Defendant.

No. 21 Civ 05005 (CM)

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Plaintiff Nelcy Mabel Garcia De León, on behalf of herself and all others similarly situated, brings this putative class action against Defendant New York University ("NYU" or the "University") alleging breach of its contractual obligations to provide certain services – namely, in-person instruction and access to campus facilities and activities – in connection with the University's decision to modify, curtail, and cancel its activities for the spring 2020 semester in response to the COVID-19 pandemic. Plaintiff brings claims for breach of contract, unjust enrichment, and for certain violations of the New York General Business Laws ("NYGBL"). She seeks a pro-rata refund of tuition and fees. NYU moves to dismiss Plaintiff's class action for lack of standing and for failure to state a claim. *See* Defendant's Mot. to Dismiss, ECF No. 19 ("Mot.").

NYU's motion to dismiss the Complaint is granted in part and denied in part.

### BACKGROUND

The novel coronavirus (COVID-19) arrived in the United States in early March 2020. In response to the unrelenting viral spread, and in accordance with state and local requirements imposed to "flatten the curve" and stop the spread of the disease, colleges and universities

1

throughout the country moved classes online and curtailed and/or canceled in-person activities and on-campus services. While nobody questions that such a response was necessary in light of the growing (and, to this day, persisting) public health threat posed by in-person gatherings, these institutions have been met with an onslaught of lawsuits from students seeking partial refunds of the tuition and fees that students pre-paid, allegedly for in-person learning and other, non-academic services. These claims have received a mixed reception by district courts.

This putative class action is one such lawsuit. It is one of six brought against NYU in the Southern District of New York.[1]

I. Facts

Plaintiff Nelcy Mabel Garcia De León was a full-time graduate student[2] enrolled at New York University before graduating in the spring of 2020. She brings this action on behalf of herself and others similarly situated seeking relief for harms arising from the University's decision to suspend all in-person classes and all in-person university sponsored events in March 2020 in response to COVID-19. Compl. ¶¶ 44-45. On March 11, 2020, the University announced that all classes would be held remotely (as opposed to in-person) for the remainder of the spring semester. Compl. ¶ 45.

Some of Plaintiff's claims arise from the payment of tuition, and others arise from the payment of other fees.

---

[1] The other five cases against NYU previous filed in this district, all assigned to Judge Daniels, are: (1) *Rynasko v. New York Univ.*, No. 1:20-cv-3250-GBD (S.D.N.Y., filed Apr. 24, 2020); (2) *Zagoria v. New York Univ.*, No. 1:20-cv-3610-GBD (S.D.N.Y., filed May 8, 2020); (3) Morales v. New York Univ., 1: 20-cv-4418-GBD (S.D.N.Y., filed June 9, 2020); (4) *Romankow v. New York Univ.*, No. 1:20-cv-04616-GBD (S.D.N.Y., filed Jun. 16, 2020); and (5) *Freeman v. New York Univ.*, No. 1:21-cv-1029 (S.D.N.Y., removed to federal court on February 4, 2020).

[2] Plaintiff does not specifically state in her Complaint which of NYU's graduate programs she was enrolled in during the spring 2020 semester. But in a footnote, she states that she "paid a $1,361 Social Work Graduate Regulation & Services Fee." Compl. ¶ 36, fn 16. So, the court presumes Plaintiff was a social work graduate student.

With respect to the payment of *tuition*: Plaintiff alleges that, while the University continued to offer academic instruction by way of online classes – and while she took the classes that were offered and earned credit for them – she and others in her position were deprived of the benefits of on-campus enrollment for which they had paid tuition. Compl. ¶ 46. Nonetheless, the University has refused, and continues to refuse, to offer any refund whatsoever with respect to the tuition that Plaintiff and others paid for the 2020 spring semester. Compl. ¶ 47.

And with respect to the payment of *fees*: Plaintiffs alleges that she and others paid other, non-academic fees in exchange for the ability to utilize certain on-campus services, including "access to campus facilities, student activities, health services and other opportunities." Compl. ¶ 48. Plaintiff was likewise deprived of those benefits when NYU shut down all on-campus activities.  And, "Although Defendant offered some refunds for fees, the refunds issued were unfair, arbitrary, and wholly insufficient to justly and equitably compensate Plaintiff and others similarly situated." Compl. ¶ 49.

Plaintiff seeks redress and to represent two classes of similarly situation students: the "Tuition Class" and the "Fees Class."

**The Tuition Class**.  Plaintiff's proposed "Tuition Class" includes "people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester, but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester."  Compl. ¶ 50.

Plaintiff brings Count I (Breach of Contract) and Count II (Unjust Enrichment) on behalf of herself and on behalf of the proposed Tuition Class.

**The Fees Class**.  On the other hand, the proposed "Fees Class" includes "people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester." Compl. ¶ 50.

Plaintiff brings Count III (Breach of Contract) and Count IV (Unjust Enrichment) on behalf of herself and on behalf of the proposed Fees Class.

Count V (violation of NYGBL § 349) and Count VI (violation of NYGBL § 350)[3] are brough on behalf of Plaintiff and both the Tuition Class and the Fees Class.

## A.  NYU's alleged promise to provide an on-campus experience.

As a precondition for enrollment, Plaintiff and the other members of the Tuition Class paid substantial tuition, either out of pocket or via student loan financing. Compl. ¶ 15.  Plaintiff alleges that she chose to attend the University rather than attending one of the many institutions that offer purely remote instruction and do not offer a campus and campus life. Compl. ¶¶ 18, 20.

Plaintiff contends that NYU markets, offers, and promises an in-person, hands-on program "complete with access to its campus facilities and services."  Compl. ¶ 19.  It was on that basis that she and others specifically chose to enroll in NYU's on-campus program and, accordingly, paid the University tuition and other fees. Compl. ¶ 20.

As evidence of a promise, Plaintiff pleads that NYU has explicitly recognized that its "on-campus student life experience is a vital part of the product it sells."  Compl. ¶ 21.  For example, NYU's admissions website made prominent statements, including: "At NYU, New York City is your classroom," that "countless opportunities at NYU are inextricably linked to the infinite

---

[3] Section 349 prohibits, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits, "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id*. § 350(a).

possibilities of New York City," that NYU is "a dynamic and prominent research university that is 'in and of the city,'"  and that the University is "here to deliver on the promise that all students will have the support and resources they need to thrive in this dynamic learning environment." Compl. ¶¶ 21-23.

Plaintiff points to the following statements made by the University and published on their admissions and student life websites as constituting a promise to provide in-person learning and the other benefits afforded by campus life and the institution:

- "Your economics class might take a trip to Wall Street to meet with business leaders and see the trading floor, or your art history professor might hold class at the Metropolitan Museum of Art." Compl. ¶ 21.

- "being an NYU student comes with benefits: steep discounts to Broadway shows, sporting events and concerts, and free or discounted access to dozens of the city's finest museums." Compl. ¶ 24.

- "on-campus benefits of being an NYU student" include: "access to NYU's recreation centers, libraries, and student clubs and activities." Compl. ¶ 25.

- Students' experiences are "enhanced by attending readings, lectures, and discussions led by New York City-based writers and publishing professional, and class trips and cultural activities provide context and inspiration for your writing." Compl. ¶ 29.

- "enjoy benefits available to all NYU students – recreation centers, libraries, student activities, and student discounts for New York attractions" Compl. ¶ 27.

- "At NYU, you'll have access to the full college experience – from improv to intramurals, and even international scuba diving. Seriously." Compl. ¶ 31.

- The University markets itself as "Proudly Diverse" – at any moment on campus, "people from every corner of the globe are creating together, exchanging ideas, and reinventing what it means to be a citizen of the world," and that prospective students should consider "the abundance of viewpoints you'll learn from at NYU's campus in New York, where students represent every U.S. state and over 90 countries – the highest number of international students in America." Compl. ¶ 32

- "At NYU, there's no excuse to stay in" – "Since NYU has so much to offer outside the classroom, we created this handy guide.  Start exploring…" Compl. ¶ 33.

- "NYU offers three athletic facilities open to all students," each of which offers variations of strength training and cardio equipment; team sports like basketball, volleyball, and swimming; and recreation classes.  Compl. ¶ 34.

Plaintiff's grievance is essentially that, when she paid tuition and fees in exchange for enrollment at NYU, she expected to receive benefits and services above and beyond basic academic instruction, including the full "New York City experience." Compl. ¶ 35.  So when NYU transitioned to fully remote academic instruction in response to the COVID-19 pandemic – and when the New York City experience became unavailable, as activities from Wall Street to Broadway shut down by order of the City and State in response to the pandemic –  NYU deprived its students of the benefit of the bargain for which they enrolled at the University, and in exchange for which Defendant had accepted payment in the form of tuition and additional, mandatory fees.  Compl. ¶ 39.  Thus, "after accepting such consideration" from Plaintiff, "Defendant provided a materially different product, which deprived Plaintiff" of the benefit of her bargain for which she accepted and tendered consideration, including "Plaintiff's choice of Defendant's institution for their degree program to the exclusion of other academic opportunities." Compl. ¶ 86.

Although NYU continued to offer academic instruction via remote learning, Plaintiff alleges that she and the members of the Tuition Class were deprived on the benefits of on-campus enrollment for which they paid (Compl. ¶ 46), while NYU "has refused, and continues to refuse, to offer any refund whatsoever with respect to the tuition that Plaintiff paid for the Spring 2020 semester." Compl. ¶ 47.

Similarly, "Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they paid, such as access to campus facilities, student activities, health services and other opportunities." Compl. ¶ 48.  And, "Although Defendant offered some refunds for fees, the refunds issued were unfair, arbitrary, and wholly insufficient to justify and equitably compensate Plaintiff and others similarly situation." Compl. ¶ 49.

6

What the Complaint does not plead is potentially as significant as what it does. From NYU's motion, we learn that Plaintiff did not attend NYU's New York City campus but was a graduate student in social work at its Rockland County campus, some 35 miles North of Washington Square and on the other side of the Hudson River. We also learn that Plaintiff, having completed her coursework during the pandemic spring of 2020, graduated with her master's in social work following the spring 2020 semester.

The University moves to dismiss the Complaint on the grounds that (i) Plaintiff lacks standing to represent the proposed classes or to seek injunctive relief; (ii) the educational malpractice doctrine bars Plaintiff's claims; and (ii) Plaintiff failed to state a claim for breach of contract, unjust enrichment, and for violations of NYGBL, Sections 349 and 350.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Federal Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id*. at 545

**DISCUSSION**

I.   Standing

As a threshold matter, NYU argues that Plaintiff lacks the requisite Article III standing to bring her claims. The University is really making two arguments: First, that Plaintiff does not have standing to assert claims related to campuses, colleges, schools, and programs in which she was not enrolled (although all of the aforementioned entities fall within the NYU umbrella); and second, that Plaintiff, having graduated in 2020, has not alleged any continuing harm and therefore does not have standing to seek injunctive relief.

Article III limits the jurisdiction of the federal courts to the resolution of "cases and controversies." *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 62 (2d Cir. 2012). The doctrine of standing gives meaning to such constitutional limits by "identifying those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  To establish Article III standing,  Plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id*. at 157–58 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

**A.  Plaintiff has standing to pursue her claims for damages.**

Defendant argues that Plaintiff does not have standing to assert claims related to NYU campuses that she did not attend and programs in which she was not enrolled. Mot. 27.  According to Defendant, because Plaintiff was a graduate student at NYU's Silver School of Social Work, who attended classes at NYU's Rockland County campus, she cannot represent a class of everyone who enrolled in any program within NYU and attended classes at any campus.  In other words, the University challenges Plaintiff's class standing to represent her proposed putative classes: the Tuition Class and the Fees Class.

The problem with NYU's argument is that it is not a standing argument. NYU offers valid and potentially compelling reasons why Plaintiff may not be an appropriate class representative for the broad class of students she seeks to represent. But that does not mean she lacks Article III standing to pursue claims for damages. Indeed, that she has standing to pursue such claims in her own right cannot be doubted.

Moreover, insofar as Plaintiff is pursuing her claim for a fee refund, as opposed to a tuition refund, NYU's student life webpage indicates that the fitness equipment, classes, and activities at all of its facilities are "open to *all* students." Compl. ¶ 34 (emphasis added). So whether Plaintiff attended school in New York City or in Rockland County, it would appear that, by virtue of being an NYU student, Plaintiff could access facilities on all NYU campuses.  Whether she did so or not is a matter to be explored when taking discovery to ascertain whether she is an appropriate class representative, and to assess her personal damages. The same is true of the opportunity to attend Broadway shows at a reduced rate (although there were no Broadway shows to attend, through no fault of NYU) or go on a field trip to Wall Street or the Metropolitan Museum of Art (which were also closed, and which may not have been a part of Plaintiff's social work curriculum – something that remains to be seen).

Because this is a putative class action, Plaintiff has class standing if she plausibly alleges: (1) that she "personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant," and (2) "that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012) (internal quotations omitted).  This test insures that "the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly

assert claims on their behalf." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 157 (2d Cir. 2014) ("*Retirement Board*"), *cert. denied sub nom. Ret. Bd. of Policemen's Annuity & Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 136 S. Ct. 796 (2016).

The plaintiff in *NECA*, a large institutional investor, alleged that Goldman Sachs violated the Securities Act by misrepresenting the underwriting guidelines of the lenders who issued the mortgage loans that the investor had purchased in the form of certificates. *NECA*, 693 F.3d at 149. The certificates were sold in seventeen separate offerings. *Id*. The plaintiff, who purchased certificates issued on only two of the offerings, sought to bring claims on behalf of a class of purchasers of certificates from all seventeen offerings. *Id*.  Goldman Sachs argued that the plaintiff did not have class standing to bring claims on behalf of class members who had purchased certificates that the plaintiff did not own. The *NECA* court determined that the plaintiff had class standing to pursue claims concerning all of the certificates, including certificates not owned by the plaintiff itself, because those claims implicated the "same set of concerns" as those of class members who did own the certificates. *Id*. at 164. The court emphasized that plaintiff had class standing because all of the claims held by the class turned on the same proof. *Id*. at 163.

By contrast, the Second Circuit held in *Retirement Board* that the plaintiff did not have class standing to bring breach of contract claims on behalf of investors in over five hundred trusts, when the plaintiff had invested in only twenty-six of those trusts. *Retirement Board*, 775 F.3d at 162. The Second Circuit compared the plaintiff's claims concerning the twenty-six trusts and the absent class members' claims concerning the remaining trusts and concluded that the claims did not "share the same set of concerns," because proving that the defendant had duty to act "require[d] examining its conduct with respect to each trust." *Id*. Unlike the claims in *NECA*, the court

explained, the plaintiff's claims in *Retirement Board* were simply too distinct from those of the absent class-members to merit class standing.

Plaintiff in this case alleges that NYU made the same promise to provide an on-campus educational experience (complete with access to facilities and services) to all NYU students and that, by switching to remote-only operations, NYU breached its implied contract with all of its on-campus students. The class claims all seek to prove the same thing: that NYU promised all of its students an in-person, on-campus educational experience and that its students paid tuition and fees with that promise in mind. So the proof that appears to be required to support Plaintiff's claims is sufficiently similar to that required to prove that absent class members' claims to give rise to so-called class standing – at least,  at this preliminary stage in the litigation.

I repeat: this does not address whether Plaintiff would appropriately be certified as a class representative for students who were enrolled in other programs (including but not limited to NYU's undergraduate program or its other professional programs) or who attended other NYU campuses (including specifically the main campus, located in New York City). That decision remains to be made. But Plaintiff has Article III standing to make that argument.

**B.  On the facts pleaded, Plaintiff does not have standing to seek injunctive relief.**

NYU also argues that Plaintiff does not have standing to seek injunctive relief because she graduated nearly two years ago (in the spring of 2020) and she is therefore "unable to establish a real or immediate threat of injury." Mot. 29 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F. 3d 220, 239 (2d Cir. 2016)). Plaintiff failed to reveal this salient fact in her Complaint, but the court is permitted to consider her graduated status as demonstrated by the extra-pleading materials attached to NYU's motion.  *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986) (where subject matter jurisdiction is challenged on a motion to dismiss, a court may consider materials outside the pleadings). But that is not necessary, because Plaintiff pleads no facts tending to show

that she continues to suffer as a result of NYU's conduct in the spring of 2020, or that she is likely to suffer in the future if that conduct were to be repeated.  And that is her burden – the party invoking federal jurisdiction must allege in her pleadings the facts essential to show standing. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

The University asserts that past injuries do not confer standing upon the Plaintiff unless she is likely to be harmed again in a similar way, which she is not, because she graduated at the end of the spring 2020 semester.  Moreover, the University argues that even if Plaintiff were still an NYU student (which she is not), she would not be harmed again because NYU – having been burned by the unexpected pandemic – has made it plain that, going forward, "Some or all instruction . . . may be delivered remotely.  Tuition and mandatory fees have been set regardless of the method of instruction and will not be refunded in the event instruction occurs remotely." Mot. 29. Therefore, any student who enrolls now or in the future does or will do so knowing that there will be no refunds if conditions require NYU to change its method of instruction and student access to facilities.

Plaintiff did not respond to NYU's motion to dismiss her claims for injunctive relief. Perhaps this is because she recognizes the defect in her Complaint and cannot correct it, since she has, in fact, graduated. A plaintiff must demonstrate standing for each claim *and* for each form of relief sought. *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 62 (2d Cir.2012). Moreover, a class plaintiff must demonstrate a real prospect of future injury in order to have standing to seek injunctive relief.  *Dodge v. Cnty. of Orange*, 103 Fed.Appx. 688, 690 (2d Cir. 2004) (named plaintiffs in class actions must themselves have standing to seek injunctive relief).

Accordingly, the court dismisses any request that Plaintiff may have made for injunctive relief.  I will dismiss this aspect of the case without prejudice; if Plaintiff chooses to file an

amended complaint in order to assert a claim for injunctive relief, she will have to plead facts tending to show that she is entitled to pursue such relief.

II.     Plaintiff's Breach of Contract Claims (Counts I & III)

Plaintiff brings Counts I and III for breach of contract – Count I relating to tuition and Count III relating to fees.  Defendant moves to dismiss both counts for failure to state a claim.

It well settled under New York law that the relationship between an institution of higher education and its students is contractual in nature. *Prusack v. State*, 498 N.Y.S.2d 455, 456 (2d Dep't 1986); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011). The parties' respective rights and obligations "as contained in the university's bulletins, circulars and regulations made available to the student" form the basis of the implied contract between a university and its students.  *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (2d Dep't 1987).

To state a breach of contract claim against a university, "a plaintiff must identify: (1) a specific contract, (2) specified services offered or promises made, and (3) the university's failure to provide those services or keep those promises." *Doe v. Columbia Univ.*, No. 19 CIV 5357 (ER), 2020 WL 1528545, at *5 (S.D.N.Y. Mar. 31, 2020).  To allege a specific promise, "a student must identify specific language in the school's bulletins, circulars, catalogues and handbooks which establishes the particular 'contractual' right or obligation alleged by the student." *Keefe v. N.Y. Law Sch.*, 906 N.Y.S.2d 773, 2009 WL 3858679, at *1 (Sup. Ct. 2009) (unpublished table decision), *aff'd*, 71 A.D.3d 569, 897 N.Y.S.2d 94 (1st Dep't 2010). It is not enough to point to a university's general statements of policy or to statements of "mere puffery." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421 (S.D.N.Y. 2021).

Interpretation of the language that purportedly constitutes a promise to provide specific services, "like the interpretation of any contract, is a matter of law for the Court." *Deen v. New Sch. Univ.*, No. 05-CV-7174 (KMW), 2007 WL 1032295, at *2 (S.D.N.Y. Mar. 27, 2007) (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)).

Defendant argues that both breach of contract claims are deficiently pleaded because: (i) Plaintiff fails to allege a specific promise by NYU that it broke; (ii) NYU has authority to make changes to its educational offerings; (iii) NYU did not act in bad faith; (iv) Covid-19 rendered NYU's performance impossible; and (v) damages are too speculative.

## A. Plaintiff does not allege a specific promise with respect to her claim in Count I, but does so with respect to her claim in Count III.

First, Defendant argues that Plaintiff's breach of contract claims both fail to sufficiently plead a specific promise made by NYU.

A university's promises to its students are "contained in the university's bulletins, circulars and regulations made available to the student." *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654, 511 N.Y.S.2d 880 (2d Dep't 1987). But not every statement made by a university is a promise, and to survive a motion to dismiss, "a student must identify specifically designated and discrete *promises*." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (internal quotations and citations omitted) (emphasis added). Reliance on, "General policy statements" or "broad and unspecified procedures and guidelines" will not suffice. *Ward v. New York Univ.*, 2000 WL 1448641, at *4 (S.D.N.Y. 2000).

This court's review of Plaintiff's breach of contract claims is "circumscribed to enforcing specific promises." *Ford*, 2020 WL 7389155, at *3.

14

Defendant argues that the implied contract between the University and Plaintiff is narrow; it is, "at most, the NYU would provide her with the ability to earn academic credits, and ultimately a degree, in exchange for tuition." Mot. 7. Accordingly, Defendant held up its end of the bargain: by providing remote classes and by awarding Plaintiff her degree when she successfully completed the graduate program in May of 2020. *Id.* at 8. Defendant contends that NYU was obligated, at most, to provide Plaintiff with the ability to earn credits and ultimately her degree.

But Plaintiff brings two separate breach of contract claims – one on behalf of the Tuition Class and one on behalf of the Fees Class. Defendant has lumped them together in its motion to dismiss, but the claims are not identical and must be discussed separately.

1. *Defendant's motion to dismiss the Tuition BOC Claim (Count I) is granted.*

Count I is brought on behalf the Tuition Class for breach of contract (the "Tuition BOC Claim"). The Tuition BOC Claim is based on the alleged existence of a contract pursuant to which "Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to an on-campus degree program; granting them the full rights and privileges of student status, including, but not limited to, access to campus facilities, access to campus activities, and live, in-person instruction in a physical classroom." Compl. ¶ 64. Plaintiff alleges that NYU promised to provide "an on-campus degree program," *plus* "full rights and privileges of student status, including, but not limited to, access to campus facilities" and "access to campus activities." *Id.*

As to the claim for a tuition refund, the argument made by NYU and described above is correct. Plaintiff has not alleged that NYU made her any specific promise in exchange for her payment of tuition other than the promise to offer Plaintiff access to classes where professors would teach her so that she could earn credits toward a degree. Indeed, the word tuition is defined

as the sum of money charged for teaching; tuition is not paid for any other purpose.[4]  Plaintiff does not plead any facts tending to show that NYU stopped offering the academic instruction that allowed her to make progress toward her degree.

Plaintiff's sole complaint is that NYU switched from in person to remote learning in order to deal with the pandemic. But the complaint alleges no facts tending to show that that NYU ever promised that plaintiff would be provided exclusively with in person learning. Neither NYU's prior course of conduct nor any of the statements made on NYU's admissions website constitutes a promise to provide students with exclusively in-person learning.

Plaintiff alleges that she and other students expected to receive in-person instruction because, historically, classes had always been held on NYU's physical campus. That is undoubtedly true, but Plaintiff's expectation does not amount to any promise made by NYU. And it is well settled that a university's prior course of conduct does not give rise to a specific promise to provide in-person instruction – certainly not a promise to provide in-person instruction notwithstanding a global pandemic and in violation of new laws forbidding indoor gatherings.  As a matter of law, a "University's academic and administrative prerogatives" may not "be impliedly limited by custom." *Gertler v. Goodgold*, 487 N.Y.S.2d 565, 568 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 946, 498 N.Y.S.2d 779, 489 N.E.2d 748 (1985). The fact that NYU provided in-person instruction "before March 2020 does not imply a contractual entitlement to continued instruction in the same location and manner." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d at 423 (applying *Gertler*). Any references to classroom locations and physical attendance requirements

---

[4] One commonly used commercial dictionary defines "tuition" as, "payment for instruction." Webster's 3d New Int'l Dictionary (1993). While the dictionary of our profession, Black's Law Dictionary, does not provide a definition for tuition, New York courts have applied Webster's definition, and at least one court has relied on the narrow definition in so holding that an agreement to pay tuition applied only to a charge for academic instruction and not for room and board. *See Bianco v. Bianco*, 36 A.D.3d 490, 491 (1st Dept. 2007).

in NYU's "syllabi, departmental policies and handbooks, and course registration portal . . . .merely memorialize the pre-pandemic practice; they offered no guarantee that it would continue indefinitely." *Id*.  So no course of conduct can be deemed a "promise" on which plaintiff could found a breach of contract claim.

Nor has plaintiff pleaded any specific promise made by NYU to conduct classes in person as opposed to remotely. Statements found on the university's web site such as, "We are here to deliver on the promise that all students will have the support and resources they need to thrive in this dynamic learning environment" (Compl. ¶ 23), are "too vague to be enforced as a contract." *Bader v. Siegel*, 238 A.D.2d 272, 657 N.Y.S.2d 28, 29 (1st Dep't 1997) (purported promise to demonstrate that the teachings of a lifestyle course "by revealing his private life in order for students to use same as an example" was too vague to constitute an actionable promise). Plaintiff does not allege that NYU failed to provide the support that she needed to obtain her degree; to the contrary, it is obvious that NYU did provide Plaintiff with what she needed to graduate at the end of her last semester of graduate school, which is classes for credit.

Reference to NYU's physical location in New York City – *e.g*., "At NYU, New York City is your classroom" and, "The countless opportunities at NYU are inextricably linked to the infinite possibilities of New York City" (Compl. ¶¶ 21-22) – do not support Plaintiff's breach of contract claim, because she does not allege that the University's physical location changed.  *In re Columbia Tuition Refund Action*, 523 F. Supp. at 423. And to the extent that NYU described the glories of being in New York City as a benefit of attending school there, it made no promise that those "infinite possibilities" would continue to be available in any and all circumstances. NYU did not deprive plaintiff or anyone else from taking advantage of those "infinite possibilities" from and after March 20, 2020 – the City and State did, by shutting everything down. Moreover, Plaintiff's

failure to allege in her Complaint that she did not attend classes in New York City (I learned of that from Defendant's motion papers) qualifies as bad faith pleading that may well have implications at some later point in this lawsuit, including implications for her quest to represent a class.

Plaintiff has not identified in her Complaint a single promise made by NYU to provide in-person instruction. Tuition is the sum of money charged for teaching; Plaintiff does not (and cannot) allege that NYU failed to teach her. She most certainly does not allege that she declined the tuition – the teaching – provided by NYU during the second half of the spring semester 2020; she accepted the benefits of that teaching by earning credits toward her degree. She got what she paid for – she got the only thing she was promised.

Accordingly, Count I is dismissed.[5]

2. *Defendant's motion to dismiss the Fees BOC Claim (Count III) is denied.*

Plaintiff brings Count III on behalf of the Fees Class for breach of contract (the "Fees BOC Claim"). Count III is premised on the existence of a contract pursuant to which "Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, benefits and/or programs related to those fees," such as "student activities, on-campus computer or lab facilities, access to recreational facilities, access to campus events," and "student health and treatment services for a portion of the Spring 2020 semester." Compl. ¶¶ 112-13.

---

[5] NYU also moved to dismiss Count I on a number of additional grounds, including that it is barred by the educational malpractice doctrine, which is discussed below (*see infra.*, pp. 23-24), as well as because NYU had the right to change its course offerings, and because Plaintiff did not suffer any damages. NYU also argues that Count I should be dismissed because it did not act in bad faith. Because I am dismissing Count I due to Plaintiff's failure to allege that any specific promise was breached, I need not and do not address those arguments in connection with Count I.

The Fees BOC Claim seeks an equitable reimbursement of certain fees that Plaintiff and other members of the Fees Class paid, in addition to their tuition, to cover specific services, programs, and benefits.  Plaintiff paid these fees for the spring 2020 semester but, because NYU was forced to shut-down all of its in-person operations, she was deprived of any practical access to the corresponding services and benefits.

Plaintiff alleges that NYU "charges a myriad of other program or course specific fees, together with optional fees for additional services and activities." Compl. ¶ 36. Plaintiff and members of the Fees Class were required to and did pay all mandatory program or course specific, and other fees associated with the Spring semester." Compl. ¶ 37.  As on example, Plaintiff asserts that she paid $1,361 to cover the "Social Work Graduate Regulation & Services Fee." But when NYU shut down its campuses and canceled all university-sponsored events, "Plaintiff and other members of the proposed Fees Class were deprived of utilizing services for which they paid, such as access to campus facilities, student activities, health services, and other opportunities." Compl. ¶ 48.

Similar claims predicated on specific promises to access certain facilities have been upheld at the motion to dismiss stage. *See, e.g., In re Columbia Tuition Refund Action*, 523 F. Supp. at 426 (allegations that university collected fees for services it was not able to provide adequately state a breach of contract claim); *Ansari v. N.Y. Univ*., No. 96 Civ. 5280 (MBM), 1997 WL 257473, at *1, *4 (S.D.N.Y. May 16, 1997) (statement touting student access to "the most sophisticated, state-of-the-art clinical facilities" sufficiently specific to allege a promise).

Although Plaintiff's allegations verge on conclusory, she manages to state a claim that NYU breached a contract to provide access to some on-campus facilities and activities in exchange for the fees that she paid.  Assuming Plaintiff's allegations to be true, it is plausible that NYU

promised to provide certain services and access to facilities in exchange for the payment of fees in addition to tuition.

I understand from the Complaint (¶ 49) that NYU did offer its students a partial refund of the fees that are the subject of Count III, but Plaintiff deems that refund to have been insufficient to redress the injury she suffered for NYU's failure to provide her with the promised services for which she paid those fees.  Plaintiff's claim is of course limited to that issue – which is whether the amount already refunded by NYU is "sufficient" to redress her lack of access to the various activities and services covered by her student fees. The fact that the semester was half over by the time the University was forced to close its facilities will no doubt factor into that analysis. So will facts relating to the use that Plaintiff herself made of those activities and facilities during the portion of the semester when they were open and available to her.

I reject NYU's argument that Plaintiff's claim should be dismissed under the educational malpractice doctrine – a doctrine that prohibits courts from interfering with a university's academic decisions (*see infra*., pp. 23-24) – because Count III does not relate to academic decisions, or to the quality of the Plaintiff's academic education, but only to her student activity fees for out-of-classroom benefits.

I also reject the argument that Count III should be dismissed because Plaintiff did not plead that NYU acted in bad faith. Bad faith is not an element of breach of contract. While  NYU argues that Plaintiff's breach of contract claims must be dismissed because, "Judicial intervention in cases against universities is limited to circumstances where the school is alleged to have acted in bad faith, arbitrarily, or irrationally."  Mot. 16.  (citing *Rodriguez v. New York Univ*., 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007),  *Rodriguez*  is not a breach of contract case. The plaintiff in *Rodriguez* brought an action against NYU pursuant 42 U.S.C. § 1981 for discrimination in

connection with disciplinary proceedings held in response to allegations that he harassed another student. The lawsuit asked the court to evaluate whether NYU's handling of the disciplinary proceedings constituted unlawful discrimination on the basis of race against the plaintiff, a Hispanic citizen of the Dominican Republic. The court dismissed the plaintiff's claims in *Rodriguez* because the plaintiff failed to plead any facts suggesting that his being found guilty of harassment had anything to do with his race.

A requirement to allege that a university acted in bad faith has been imposed only in cases (like *Rodriguez*) challenging a university's decision regarding academic standards, such as the decision to suspend, expel, or otherwise discipline a student for academic unfitness. *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 427 (S.D.N.Y. 2021). On the other hand, as pointed out by my colleague Judge Furman in *In re Columbia Tuition Refund Action*, "where courts applying New York law have assessed whether an educational institution breached a specific promise to provide discrete services – as opposed to reviewing decisions involving academic standards – they generally have not inquired into whether the challenged decision was arbitrary or made in bad faith." *Id.* (declining to require allegations of bad faith to plead breach of contract).

I agree with Judge Furman. University decisions regarding "academic standards" are entitled to judicial deference because such decisions must be left to the sound judgment of professional educators. But there is no call for deference when a court is called upon to determine whether a university breached a contract to provide a specified service, as such a determination is "based on provisions of universities' publications that courts are well-equipped to interpret according to established contractual interpretation principles." *Id.* Count III is not about academic standards; it is about whether Plaintiff is entitled to more of a refund than she has already gotten for her non-tuitional fees because she could not go to the gym or avail herself of other NYU

facilities. Like Judge Furman, I too recognize that other courts in this district have applied a bad

faith standard in "diverse circumstances" and not solely in cases involving academic standards

entitled to judicial deference. But a "bad faith standard" has not been applied to any claim arising

out of "a university's failure to provide services that it had expressly promised in its publications."

*In re Columbia Tuition Refund Action*, 523 F. Supp. at 428 (distinguishing cases).

Finally, I reject the argument that Count III must be dismissed because "Covid-19 and the

related government edicts closing schools rendered NYU's performance impossible" (Mot. 7).

Impossibility is not dispositive on a motion to dismiss.

Assuming that the invocation of the doctrine of impossibility excuses NYU's obligation to

perform – to provide non-academic services in exchange for the payment of fees –  it does not

necessarily excuse the University from its obligation to *repay* Plaintiff and other members of the

Fees Class who gave the university money in exchange for the services that it became impossible

to provide. *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 89 (2d Cir. 2021) (summary judgment on

breach of contract claim not warranted pursuant to the impossibility doctrine because repayment

is required even when performance is excused).  Impossibility of performance excuses *both* parties

from performance under a contract. And, in this case, Plaintiff alleges that she already performed

by pre-paying certain non-academic fees to cover the entire spring 2020 semester.  Based on the

facts alleged in the Complaint, it is plausible that, even though NYU's performance was

impossible, Plaintiff is entitled to more of a refund of student fees than she has thus far received.

Defendant's motion to dismiss Count III of the Complaint is denied.

III.    Unjust Enrichment (Counts II & IV)

In the alternative to her breach of contract claims, Plaintiff brings claims for unjust

enrichment on behalf of herself and of both proposed putative classes – the Tuition Class (Count

II) and the Fees Class (Count IV). Specifically, she alleges that NYU impermissibly enriched itself by retaining tuition and fees paid by Plaintiff and others similarly situated, despite the operational changes necessitated by the pandemic.

To state a claim for unjust enrichment under New York law, a plaintiff must allege "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (Sotomayor, J.) (quoting *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983)).

Under New York law, "the theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (2012) (internal quotation marks omitted). That is to say, unjust enrichment claims are available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," such as when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177, 1185 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract ... claim." *Id.*

**A. The motion to dismiss Count II (Tuition Based Unjust Enrichment) is granted.**

NYU moves to dismiss both the unjust enrichment claims duplicative of the breach of contract claims. Plaintiff counters that, at this stage, her unjust enrichment claims should not be dismissed on such grounds because she is permitted to plead them in the alternative.

"Unjust enrichment may be pleaded in the alternative where there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." *Downey v. Adloox, Inc.*, 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017). Unjust enrichment is appropriate where, "though the

defendant has not breached a contract," and "though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello*, 967 N.E.2d at 1185 (citations omitted).

Count II is a claim for unjust enrichment brought on behalf of the Tuition Class. The breach of contract claim counterpart (Count I) has already been dismissed for failure to allege a specific promise. There is, therefore, no surviving claim breach of contract claim that Count II could impermissibly duplicate.

But Count II, which is predicated on unjust enrichment by virtue of NYU's retention of tuition payments, is barred by the educational malpractice doctrine.

The educational malpractice doctrine flows from an understanding that courts should have a "'restricted role' in dealing with and reviewing controversies involving colleges and universities." *Radin v. Albert Einstein Coll. of Med. Of Yeshiva Univ.*, 2005 WL 1214281, at *10 (S.D.N.Y. 2005) (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92 (1999)). This limitation "is grounded in the view that in matters wholly internal these institutions are peculiarly capable of making the decisions which are necessary to their continued existence." *Gertler v. Goodgold*, 107 A.D.2d 481, 485–486 (1st Dep't 1985), *aff'd* 66 N.Y.2d 946 (1985).  So it is true that the doctrine warrants dismissal of actions that ask the court to evaluate whether "the school breached its agreement to provide an effective education," to "evaluate the course of instruction," or  to "review the soundness" of teaching methods.  *Ansari v. New York Univ.*, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997) (citing *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (2d Dep't 1982)).

As NYU correctly states, "It is well-settled that New York does not recognize claims that require the Court to second guess the decisions of educators or akin to a claim 'that the school breached its agreement by failing to provide an effective education,' such as where a court would have to 'evaluate the course of instruction,' or 'review the soundness of the method of teaching.'"

Mot. 25 (quoting *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779 (2d Dep't 1996)).   NYU is absolutely correct that, in order to adjudicate Plaintiff's tuition-based claim for unjust enrichment, this court would have to examine and evaluate the *quality* of the education that was provided to Plaintiff. Since Plaintiff availed herself of the remote education that NYU hastily arranged to provide her when State and local regulation required it to close down its campuses to in-person teaching, the only way in which NYU could have been unjustly enriched by retaining her entire tuition is if the education with which Plaintiff was provided was somehow inferior to the education she was getting in the classroom. That would require the court to review and assess changes (if any) to the course materials, syllabi and assignments that were occasioned by the conversion to remote learning;  the relative effectiveness of the methods of teaching utilized (were lectures no longer lectures; was student participation somehow rendered impossible over Zoom; did professors cease to make themselves available for consultation) and  the student's input and work product – "and then ascribe some monetary value to any supposed deviation from the prior….standard." Mot. 27.  Precedent  "mandates" that I not "wade into such day-to-day judgments of educators." *Id*.  And because this claim sounds in unjust enrichment, I would also have to dissect whatever additional costs NYU incurred to provide remote education in the pending emergency and compare them with any moneys that were saved (if any were) when the campuses closed down.

Of course, the educational malpractice doctrine does not foreclose *all* lawsuits brought by students against their universities. When the essence of a claim does not involve challenging the *effectiveness* of education, the claim is not barred by the educational malpractice doctrine.  But in this case, as to this particular tuition-based unjust enrichment claim, the only way that Plaintiff could prove that NYU was "unjustly" enriched would be to prove that she did not receive an

education during the second half of the spring 2020 semester that was worth the amount of money she paid for it. That is precisely where a court of law cannot go.

### B.  The motion to dismiss Count IV (Fees Based Unjust Enrichment) is denied.

Plaintiff brings Count IV – the other unjust enrichment claim – on behalf of the Fees Class. The Fees Class breach of contract claim has not been dismissed. And while plaintiff cannot recover on both Count III and Count IV, she is entitled at this stage to plead them in the alternative – in case it turns out that it is impossible to ascertain the terms of a definitive contract to provide non-academic services and opportunities for which student fees were paid. And Plaintiff correctly argues that, if NYU establishes that performance of such a contract was rendered impossible, then Plaintiff's unjust enrichment arguments could be used to fill the gap. *See H.Daya Int'l Co. v. Arazi*, 348 F. Supp. 3d 304, 312 n.6 (S.D.N.Y. 2018) (dismissing unjust enrichment claim as moot only after defendants failed to prove impossibility of contract and were found liable for breach of contract).

Defendant also argues that Plaintiff's unjust enrichment claim must be dismissed because she fails to plead any facts showing that "equity and good conscience" require a refund of fees. Not so.  Plaintiff specifically alleges that she paid fees to NYU "in expectation of receiving one product" – access to facilities for the entire semester – but was "provided with a materially different product." Plaintiff further alleges that Defendant NYU "retained this benefit, even though Defendant failed to provide the services" for which the fees were collected, "making Defendant's retention unjust under the circumstances." Compl. ¶ 99. As such, Plaintiff sufficiently pleaded that equity and good conscience require Defendant to issue a larger partial refunds than it has to date. Whether such matters as the fact that "Defendant is supported by a $4.7 Billion endowment," or "Defendant received $25,626,944 in federal stimulus under the 2020 CARES Act,"  (Compl. ¶¶ 103-4) are relevant to the question of unjust enrichment is a matter for another day.

26

Of course, refusing to dismiss this claim does not suggest that NYU is to *blame* for what happened in the Spring of 2020.  I can hardly blame NYU for closing its facilities in the face of a deadly pandemic, especially when required to do so by law. But alas, "the doctrine of unjust enrichment does not require such blame." *Beck v. Manhattan Coll.*, 537 F. Supp. 3d 584, 590 (S.D.N.Y. 2021) (plaintiff sufficiently alleged that her college was not entitled to retain entire payment "after shifting instruction online, closing facilities, and receiving CARES Act funding").

At this stage, the court must accept the factual allegations of Count IV as true. Accordingly, I will not dismiss Plaintiff's unjust enrichment claim brought on behalf of the Fees Class (Count IV). That said, deciding whether NYU (which has already given a partial refund of student fees) was enriched at all, let alone "unjustly" so, will be no simple matter.

IV.   NYGBL, Sections 349 & 350 (Counts V & VI) Are Dismissed

Finally, Defendant moves to dismiss Plaintiff's claims that NYU violated Sections 349 (Count 5) and 350 (Count 6) of the New York General Business Law (NYGBL).

NYGL Section 349 prohibits, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits, "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Id*. § 350.

To state a claim for a violation of either Section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co*., 18 N.Y.3d 940, 944 N.Y.S.2d 452, 967 N.E.2d 675, 675 (2012) (internal quotation marks omitted). Material omissions may give rise to a claim where "the business alone possesses material information that is relevant to the consumer and fails to provide this

information." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, N.A., 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 745 (1995).

Plaintiff's NYGBL claims plainly fail. Nowhere does the Complaint allege that the University knew, at the time it made representations about the services it would offer during the spring 2020 semester, that it would be unable to make good on that offer. The representations cited by plaintiff were made well in advance of the onset of the pandemic. Plaintiff does not cite to a single case holding that a claim lies under Section 349 or 350 when the defendant neither knew nor could have known that what it included in its public statements would later turn out to be impossible,  due to unanticipated forces that were entirely beyond the speaker's control. Plaintiff obviously has not and cannot plead facts demonstrating that NYU knew when it published its catalog that a deadly global pandemic would necessitate fundamental changes to its operations beginning in mid-March 2020 – changes that would be required by state and local laws, changes that were imposed in NYU by the government during a genuine emergency. Nor does she plead facts tending to show that NYU had no intention, when it made whatever representations it made, of providing the services it described.

Defendant's motion to dismiss Counts V & VI of the Complaint is granted.

## CONCLUSION

For the reasons discussed above, Counts I, II, V and VI of the Complaint are dismissed, as is Plaintiff's request for injunctive relief.  The motion to dismiss Counts III and IV is denied.

Now on to further proceedings.

Plaintiff's individual claims are not federal in nature and do not come close to meeting the threshold for diversity jurisdiction, if diversity even existed (which, apparently, it does not).  So the only basis for federal jurisdiction in this matter is the Class Action Fairness Act ("CAFA")

which provides that the "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." 28 U.S.C. § 1332(d)(2).    It is, therefore, imperative that the court ascertain as quickly as possible whether this action can be maintained as a class action.

Plaintiff has 60 days – until March 21 – to file a motion for class certification. Between now and then Defendant may depose Plaintiff in order to ascertain the scope of her fee refund claim, which is all that remains of her complaint. Defendant has until April 5 to oppose the motion for class certification; Plaintiff has until April 11 to file a reply. The motion will be decided promptly. Only class-related discovery may go forward pending over the next 60 days; discovery addressing only the merits  is stayed until the motion is decided. Class discovery must be conducted on an expedited basis. All interrogatories and requests for document production (limited to class issues, which the court construes narrowly) must be filed by January 29; the responding party has until February 21 (Plaintiff) and February 28 (Defendant) to respond to those requests. Plaintiff's deposition must be taken by March 10. Adequacy of representation is very much an issue in the

opinion of the court. If Plaintiff decides she wishes to propose any subclass, she must do so in writing by January 28.

This constitutes the decision and order of the court. It is a written opinion.

The Clerk of Court is respectfully directed to terminate the motions at Docket Number 19 and Docket Number 27.

Dated: January 20, 2022

_____

U.S.D.J.

BY ECF TO ALL COUNSEL