**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NELCY MABEL GARCIA DE LEON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:21-cv-05005-CM |
| v. | |
| NEW YORK UNIVERSITY, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPESENTATIVE AND CLASS COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ III

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 3

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ............................................................................................................... 7

   A.   THE PROPOSED CLASS IS DEFINITE AND ASCERTAINABLE ............................. 7

   B.   THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(A). ............... 8

      1)   *The Class Satisfies the Numerosity requirement of Rule 23(a)(1)* ................................. 8

      2)   *The Questions of Law and Fact are Common to All Class Members* ............................. 9

      3)   *Plaintiff's Claims are Typical of the Other Class Members' Claims* ........................... 10

      4)   *Plaintiff and Her Counsel will Adequately Represent the Class.* ................................ 11

   C.   THE PROPOSED CLASS SATISFIES RULE 23(B)(3) .................................................. 13

      1)   *Common Issues Predominate* ......................................................................... 14

      2)   *A Class Action is the Superior Procedure for Managing this Case.* ............................ 15

   D.   THE CLASS ALSO SATISFIES RULE 23(B)(2) .......................................................... 16

   E.   ALTERNATIVELY, CLASS CERTIFICATION UNDER RULE 23(C)(4) IS
APPROPRIATE ......................................................................................................... 18

CONCLUSION ........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adkins v Morgan Stanely*, 307 F.R.D. 119 (S.D. N.Y 2015) ............................................. 15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 6, 12

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455 (2013)..................... 5, 6, 16

*Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) ......................... 11

*In Re Allergan PC Sec. Litig.*, 2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021) .................... 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d. 430 (S.D.N.Y. 2018) ................................................................................................................... 15

*In Re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2nd Cir. 2011) ................................................................................................................... 12

*In Re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).............................................................................................................. 11

*In re Nassau Cty. Strip Search Cases,* 461 F.3d. 219 (2nd Cir. 2006)............................... 18

*In Re Patriot National, Inc. Sec. Litig.*, 828 Fed. App'x. 760 (2nd Cir. 2020) .................... 8

*In Re Petrobras Securities*, 862 F.3d. 250  (2nd Cir. 2017).................................................. 7

*In re Restasis Antitrust Litigation*, 335 F.R.D. 1 (E.D. N.Y. 2020) ............................ 14, 15

*In Re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y 2015)............................................ 14

*In Re Terms Commodities Cotton Futures Litg.*, 2022 WL 485005 (S.D.N.Y Feb. 17, 2022) ......................................................................................................... 6, 8, 9, 10

*Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. 2013).......................................... 18

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247  (2d Cir. 2002)........................................ 10, 14

*Myers v. Hertz Corp.*, 624 F.3d 537  (2d Cir. 2010) ......................................................... 10

*Nnebe v. Daus*, 2022 WL 615039 (S.D.N.Y. March 1, 2022) .............................................. 6

*Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir. 2014)9

*See In re Motor Fuel Temperature Sales Practices Litig.*, MDL No. 1840, 2013 WL 1397125 (D. Kan. Apr. 5, 2013) .................................................................................................... 18

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ......... 16

*Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338 (2011) ................................. 5, 9, 16, 17

## Rules

F. R. Civ. P. 23(a) ............................................................................................................... 6

F. R. Civ. P. 23(a)(1) ........................................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 13

Fed. R. Civ. P. 23(b) ........................................................................................................... 7

Fed. R. Civ. P. 23(b)(2) ................................................................................................. 7, 19

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 7, 15, 16

Fed. R. Civ. P. 23(c)(4) ....................................................................................................... 7

Fed. R. Civ. P. 23(g)(1) ..................................................................................................... 21

Fed. R.Civ P 23(a)(2) ........................................................................................................ 10

## Other Authorities

2 Newberg on Class Actions § 4:26 (5th ed. 2020) ........................................................... 17

## INTRODUCTION

Students, when deciding where to go to college, have the option to select either a traditional, on-campus education or an online education. The difference between the two options is cost. In 2021, to attend a private university, such as NYU, the average degree cost is $148,800 whereas an online degree at a private university costs $58,560. See Exhibit 1. When students enroll at a University seeking a degree taught by on-campus and in-person classes, and pay the higher costs associated with a traditional degree, students expect to have in-person and on-campus educational services, facilities, and amenities for the entire semester that they paid in advance for. This is the case here. All students who enrolled at New York University with the intent of gaining a traditional degree, paid significant money in the form of tuition and fees to obtain a traditional degree from New York University. New York University, after failing to provide on-campus and in-person educational services, facilities, and amenities for the entire Spring 2020 semester, refused to refund a pro-rated amount of fees paid by all students. New York University's decision to not issue a pro-rated refund uniformly injures all students.

Plaintiff Nelcy Mabel Garcia De Leon ("Plaintiff") brought this action as a putative class action on June 7, 2021 (Dkt. No. 4) against Defendant, New York University ("NYU", the "University", or "Defendant"). Plaintiff, a student enrolled at NYU during the Spring 2020 semester, has brought suit on behalf of herself and the proposed class, seeking damages for Defendant's breach of contract for fees. Plaintiff respectfully requests the Court to certify a Fees Class, defined as "All persons whom paid fees for or on behalf of students enrolled at New York University who were charged fees for services, facilities, resources, events and/or activities for the Spring 2020 Semester that were not provided in whole or in part." Compl., *Dkt.* 4, ¶ 50.

This case is perfectly suited for class certification. NYU charged students tuition and fees in exchange for in-person, on-campus instruction, services, and access to on-campus facilities for the entire Spring 2020 semester, which the University did not provide or make available to students because NYU closed all campuses on March 11, 2020. *Dkt.* 4, ¶¶ 44 – 45. As a result of Defendant's uniform conduct across all NYU campuses, Plaintiff brought this action, alleging claims of breach of contract on behalf of herself and all students, or those acting on behalf of students, who paid fees for the Spring 2020 semester for services that NYU did not ultimately provide.

The principal question for Plaintiff and all Class members is the same: whether NYU entered into a contract with students by accepting their payment of Fees for the services and access that NYU, thereafter, failed to provide students with the contracted for access and services while retaining the funds. This question applies equally to Plaintiff and across the entire Class, so that class litigation is the superior method to adjudicate these claims. The Court should certify the Class because it meets all requirements of Federal Rule of Civil Procedure 23.

It is undisputable that the proposed Class consists of thousands of undergraduate and graduate NYU students who paid Fees to the University for services that NYU did not provide. The proposed Class share common breach of contract claims based on the University's common course of conduct, and the claims are typical of all Class members. Further, common issues concerning NYU's uniform course of conduct, which resulted in all students being treated the exact same way and suffering the same type of readily quantifiable damages, predominate over individual questions about the amounts of fees paid by individual students. Lastly, Plaintiff is an adequate class representative because she has no conflicts of interest with Class members and is

committed to litigating this action. Furthermore, Plaintiff has retained counsel who are highly experienced in class action litigation.

Because the Class satisfies Federal Rule of Civil Procedure 23, Plaintiff respectfully requests that the Court enter an order certifying the Class, appointing Plaintiff as class representative and her counsel as Class Counsel.

## FACTUAL BACKGROUND

This case arises out of NYU's decision at the end of the Spring 2020 semester to retain all fees monies, despite being unable to provide students, including Plaintiff, with the in-person and on-campus educational services that they agreed to, contracted for, and paid for. *Dkt.* 4, ¶ 1. Prior to the beginning of each semester, students at NYU are required to pay mandatory fees, which Plaintiff paid. *Dkt.* 4, ¶ 37. As alleged in the Complaint, Plaintiff made these payments in exchange for in-person and on-campus educational services, experiences, and opportunities as detailed in Defendant's marketing, advertisements, and other public representations. *Dkt.* 4, ¶ 35.

Plaintiff was a full-time graduate student enrolled at NYU for the Spring 2020 semester who paid tuition and fees to NYU. *Dkt.* 4, ¶ 10. Specifically, Plaintiff was a Graduate Student at NYU's Rockland Campus studying in the Silver School of Social Work. Even though the Rockland Campus was Plaintiff's "home campus", NYU's website, first archived in August 2020 and remains presently available, promised: "students who choose Rockland as their 'home' campus have the option of taking some of their classes at other NYU Silver campuses, and they have access to all of the services and study abroad opportunities that the University has to offer."[1] Thus, through payment of mandatory fees, all students, regardless of which NYU satellite campus is their

---

[1] NYU Rockland County Campus,
https://web.archive.org/web/20201020223329/https://socialwork.nyu.edu/about/campuses/rockland-county.html

"home campus", have access to all facilities, services, and amenities offered throughout all of NYU's campuses.

NYU charges a variety of fees to cover different services. These fees include, Housing, Meal Plan, NYU Book store / Computer Store Fee, Course-and School-Based Fee, and a Registration and Services Fee. Exhibit 2. Along with the plethora of other fees charged, NYU charges students a Registration and Services Fee. As described by NYU's website in August of 2020, the Registration and Services Fee "serves students and enhance[s] University life in support of our academic program. These services may include, but are not limited to, the Registrar, Student Health Center, the Wellness Exchange / Counseling Service, the Wasserman center, Information Technology, and Student life." Exhibit 2. Therefore, by paying the associated fees, Plaintiff and Class members expected to have access to all the on-campus services for the entire semester that the fees help provide to students.

However, on March 10, 2020, NYU President Andrew Hamilton announced to all NYU students: "Today is the last day of in-person classes before spring break… This was not the spring semester we envisioned for you; I am sure it is not the one you foresaw for yourself. The vibrancy of the classroom experience and the energy of campus life are important parts of the college experience." Exhibit 3. In response to the COVID-19 pandemic, NYU announced that starting on March 11, 2020 all in-person classes were cancelled and would be taught remotely "across the University, including throughout its New York City campus." Exhibit 4. As stated by NYU's President, Plaintiff and the Class expected to have access to NYU's on-campus facilities, services, and amenities throughout the entire Spring 2020 semester. Yet, despite acknowledging that Plaintiff and Class members were not getting the benefits that they expected to get upon payment

of fees, NYU stated that because class continued to be taught remotely, no fees would be refunded. Exhibit 5.

Thus, Plaintiff and the proposed Class did not receive the benefit of what they bargained and paid for when they paid NYU fees. Despite not providing Plaintiff, and all other students, with access to what they paid for, NYU refused to reimburse students for the pro-rated, unused portion of fees paid as a result of NYU closing campus. Exhibit 5. Accordingly, Plaintiff correctly asserts claims for breach of contract. This Court's decision on January 20, 2022, denying in part Defendant's motion to dismiss confirms the same. ECF 54.

However, at this stage of the litigation, the Court need not "adjudicate the case; rather, it is to select the "metho[d]" best suited to the adjudication of the controversy 'fairly and efficiently.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 460 (2013). The question presented here is whether the thousands of students who bear the same loss arising from the same factual and legal questions as Plaintiff should be allowed to litigate their claim in a class setting.

There is no doubt that proceeding as a class action is the most fair and efficient method of adjudication. It would be extremely inefficient and a waste of judicial resources to require over thousands of students who were enrolled at NYU during the Spring 2020 Semester to, one-by-one, file lawsuits seeking the same relief from the same set of facts. Furthermore, the answers to the common questions of fact and law regarding NYU's liability and the method of calculating damages will be the same for all Class members. *See Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338 (2011) ("What matters to class certification ... is not the raising of common 'questions'— even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."). Additionally, the members of the

proposed class are easily identifiable: all students enrolled at NYU during the Spring 2020 semester. Therefore, for the reasons described herein, Plaintiff's motion for Class Certification, appointment of Class Representative, and appointment of Class Counsel should be granted.

## LEGAL STANDARD

To determine whether a plaintiff's proposed class should be certified courts will look to see whether all four requirements of Rule 23(a) have been satisfied along with one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Court may only consider questions regarding the merits of the case "to the extent that they are relevant to determining whether the Rule 23 requirements for class certification are satisfied." *Amgen*, 568 U.S. at 466. Before a court may certify a case as a class action, "the proposed class must meet the following Rule 23(a) prerequisites: '(1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Nnebe v. Daus*, 2022 WL 615039, at *4 (S.D.N.Y. March 1, 2022)(citing F. R. Civ. P. 23(a)).

Furthermore, "under Rule 23(b)(3), the court must decide whether 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members,' and whether a class action 'is superior to other available methods for the fair and efficient adjudication of the controversy.'" *In Re Terms Commodities Cotton Futures Litg.*, 2022 WL 485005, at *3 (S.D.N.Y Feb. 17, 2022)(quoting Fed. R. Civ. P. 23(b)). Thus, adjudication as a class action, is the superior form of adjudication where, as in this case, Plaintiff raises common questions of law and fact for all members of the proposed class.

**ARGUMENT**

Plaintiff is able to meet all requirements of Fed. R. Civ. P. 23(a) and at least one prong of Rule 23(b) or Rule 23(c)(4). Rule 23(b)(2) requires that Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires common questions of law and fact to predominate over questions affecting only individual class members, and a class action is "superior to other available methods of adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Lastly, Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Plaintiff meets all prerequisites of Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3). In the alternative, Plaintiff also meets the requirements of Rule 23(c)(4).

**A. THE PROPOSED CLASS IS DEFINITE AND ASCERTAINABLE**

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable' often characterized as 'an 'ascertainability' requirement.'" *In Re Petrobras Securities*, 862 F.3d. 250, 264 (2nd Cir. 2017) (internal citations omitted). The Second Circuit has stated that "the ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *Id.* The court in *Petrobras* further stated that the "modest [ascertainability] threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In Re Petrobras Securities*, at 269. Thus, "in other words, a class should not be maintained without a clear sense of who is suing about what." *In Re Petrobras Securities*, at 269.

Here, the class is clearly defined with definitive boundaries. Plaintiff seeks to certify the class: "All persons whom paid fees for or on behalf of students enrolled at New York University

who were charged fees for services, facilities, resources, events and/or activities for the Spring 2020 Semester that were not provided in whole or in part." *Dkt*. 4, ¶ 50. The defined class is definitive because it only includes NYU students enrolled for the Spring 2020 semester. Furthermore, the proposed class is further limited to only students enrolled at NYU who paid fees or whose fees were paid on their behalf. Thus, the proposed class contains approximately 50,000 students, including both undergraduate and graduate students, all of whom either enrolled and paid fees, or paid fees on behalf of a student enrolled at NYU.

This objectively defined class is easily and readily ascertainable from NYU's financial and student records. Therefore, Plaintiff's proposed class satisfies the ascertainability threshold of Rule 23.

**B. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(a).**

"The party seeking to certify a class bears the burden of satisfying Rule 23(a)'s four threshold requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In Re Patriot National, Inc. Sec. Litig.*, 828 Fed. App'x. 760, 764 (2nd Cir. 2020). Here, Plaintiff's proposed class meets all requirements of Fed. R. Civ. P. 23(a).

**1)  The Class Satisfies the Numerosity requirement of Rule 23(a)(1)**

Federal Rule of Civil Procedure 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *In Re Terms Commodities Cotton Futures Litg.*, 2022 WL 485005, at *3 (S.D.N.Y Feb. 17, 2022). However, "although there is no bright line rule setting a requisite number of class members for certification, 'numerosity is presumed for classes larger than forty members.'" *In Re Terms Commodities Cotton*

*Futures Litg.*, 2022 WL 485005, at *4 (S.D.N.Y Fed. 17, 2022)(citing *Pa. Pub. Sch. Employees'*
*Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014)).

Here, Plaintiff's proposed class is so numerous that joinder of all parties is impracticable
and difficult. As stated in Plaintiff's complaint, there are approximately 50,000 students that were
enrolled at NYU during the Spring 2020 semester. *Dkt.* 4, ¶ 7; Exhibit 6. Joining every individual
student as a party into a singular action would be extremely difficult and inefficient. Thus, Rule
23(a)'s numerosity requirement is met here, where the class totals approximately 50,000
students—the number of students enrolled at NYU for the Spring 2020 semester.

### 2)  The Questions of Law and Fact are Common to All Class Members

Rule 23(a)(2) requires plaintiffs who are seeking class certification demonstrate that all
class members share "common questions of law or fact." Fed. R.Civ. P 23(a)(2). "The
commonality requirement is met if plaintiffs' grievances share a common question of law or of
fact." *In Re Terms Commodities Cotton Futures Litg.*, 2022 WL 485005, at *4 (S.D.N.Y Fed. 17,
2022). Rule 23(a)(2)'s commonality "requires the plaintiff to demonstrate that the class members
'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus,
the crux of the commonality requirement is "the capacity of a class-wide proceeding to generate
common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*,
U.S., at 350 (internal citations omitted). Commonality is met where the "common contention [is]
of such a nature that it is capable for classwide resolution—which means that determination of its
truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke."
*Id.*

The present case would resolve thousands of identical cases in one stroke. The core of this
case surrounds NYU's unilateral conduct that uniformly impacted all NYU students.  When NYU

closed campus and required all courses to be taught in a remote and online format, NYU did so uniformly across all campuses and for all students. The factual and legal issues involved in this case are uniform to the class and the resolution of these issues will resolve all issues for the class. For example, issues such as whether NYU breached contracts when it failed to provide access to facilities and services already paid for (*see Dkt.* 4, ¶ 114), is a question that should be resolved on a class wide basis. The factual and legal issues that predominate over this case surround NYU's decision to close all campuses and require courses to be remote and online. Thus, Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

### 3)  Plaintiff's Claims are Typical of the Other Class Members' Claims

Rule 23(a)(3) requires the named plaintiff's claims to be typical of those of the proposed class members. "The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). "Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are *more substantial* than the issues subject only to individualized proof." *In Re Terms Commodities Cotton Futures Litg.*, 2022 WL 485005, at *4 (S.D.N.Y Feb. 17, 2022)(citing *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002)). Plaintiff readily meets this requirement.

All Class members, including Plaintiff, paid fees as part of their enrollment in NYU for the Spring 2020 Semester. NYU, after accepting student's fees monies, mandated students to vacate campus, materially altered the product, services, and facilities that students received without refunding the fees intended to finance those products, services, and facilities. Thus, every Class

member was deprived the benefit of their bargain, and, therefore, each Class member asserts the same legal claims arising out of NYU's uniform misconduct.

Simply because there may be minor variations in the fees paid by members of the Class does not render Plaintiff's claims atypical. "Typical' does not mean 'identical'" and typicality "is not defeated by minor variations in the fact patterns of individual class member[s'] claims." *In Re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Thus, "factual differences … will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.* (internal citations omitted). Stated differently, typicality is not defeated so "long as the wrong is alleged to have occurred in the same general fashion." *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 232 (S.D.N.Y. 2010)(internal citations omitted).

Here, Plaintiff brings this as a putative class action as a direct result of NYU's uniform misconduct. Thus, the minor differences in fees paid by putative Class members is immaterial as the claim arises from NYU's uniform decision to close all campuses and move all classes to an online and remote format. The material fact is that all Class members, including Plaintiff, paid a fee to NYU for access to NYU's on-campus and in-person services, facilities, and amenities. Since all Class members were damaged as a result of NYU's same unilateral misconduct, which is applicable to all campuses and students, Plaintiff's claims are typical of the other Class members, satisfying the typicality requirement of Rule 23(a)(3).

### 4)  Plaintiff and Her Counsel will Adequately Represent the Class.

The final requirement of Rule 23(a) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class

they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "To satisfy Rule 23(a)(4), the named plaintiffs must 'possess the same interest [s] and suffer the same injur[ies] as the class members.'" *In Re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 249 (2nd Cir. 2011)(internal citations omitted). "Not every conflict among subgroups of a class will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." *Id.*

"This requirement is designed to weed out potential lead plaintiffs with 'fundamental' conflicts of interest that 'go to the very heart of the litigation.'" *In Re Allergan PC Sec. Litig.*, 2021 WL 4077942, at *7 (S.D.N.Y. Sept. 8, 2021)(internal citations omitted." Thus, the evaluating court must consider "whether: (1) plaintiff's interests are antagonistic to those of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Id.* (internal citations omitted).

Plaintiff does not have any conflicts of interest with putative Class members and is prepared to litigate this case to its fullest. Plaintiff's interests are identical to Class members' interests as exemplified by Plaintiff's petition at NYU to receive a refund. *See* Plaintiff's Decl., ¶ 18. Plaintiff, as a result of all students not receiving refunds for the services, benefits, and amenities previously paid for, started a petition to try to get NYU to issue refunds to students. This petition was signed by over 1,000 other students. *See* Plaintiff's Decl., ¶ 18. Thus, Plaintiff's interest are not antagonistic to the proposed class and she is well-suited to be a class representative.

Plaintiff understands her role in this litigation as she has already appeared for a deposition lasting over 6.5 hours and has responded to discovery requests. *See* Plaintiff's Decl., ¶ 20. As demonstrated by the record, Plaintiff has spent numerous hours consulting with class counsel, responding to Defendant's discovery requests, and sitting and preparing for a deposition. *See*

Plaintiff's Decl., ¶¶ 19 – 21. Throughout her deposition, Plaintiff answered questions regarding her time at NYU as well as the allegations in the complaint.

Furthermore, Plaintiff is represented by experienced counsel who have significant experience in effectively and vigorously prosecuting cases. *See* Willey Decl., ¶ 4.  Plaintiff's counsel is highly qualified to represent Plaintiff and the proposed Class members. *See* Willey Decl., ¶ 4.  The Anastopoulo Law Firm is currently in the process of litigating over 30 college COVID-19 tuition and fee refund cases across the country. *See* Willey Decl., ¶ 6.

Significantly, Anastopoulo Law Firm has been appointed interim lead counsel in analogous cases seeking pro-rated refunds based on Universities' decision to cancel in-person classes and close campus. *See* Willey Decl., ¶ 5. Furthermore, the Anastopoulo Law Firm received the first appellate decision in the country for an analogous college refund case. *See* Willey Decl., ¶ 7. In *Qureshi v. American University*, the D.C. Court of Appeals, after hearing oral argument from Roy T. Willey, reversed the district court's decision and revived two portions of the suit. *See* Willey Decl., ¶ 7.

Additionally, Plaintiff's counsel has dedicated significant resources to developing the claims in this case and are committed to continuing to vigorously prosecuting this action. The Anastopoulo law firm has dedicated an in-house team of five attorneys, along with support staff, to specifically litigate COVID-19 tuition and fee refund cases. *See* Willey Decl., ¶ 13. Plaintiff's counsel has been and remains committed to litigating this matter to its fullest. Thus, the adequacy of both Plaintiff's counsel and Plaintiff has been established to satisfy Rule 23(a)(4).

### C. THE PROPOSED CLASS SATISFIES RULE 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also sets forth four factors for the courts to consider in evaluating predominance and superiority: "A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

### 1)  Common Issues Predominate

"Rule 23(b)(3) requires only 'a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *In Re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y 2015). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.'" *In re Restasis Antitrust Litigation*, 335 F.R.D. 1, 14 (E.D. N.Y. 2020) (internal citations omitted).

In the present case, common issues—whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with in-person and on-campus use of educational facilities, services, and amenities for the entire Spring 2020 semester—clearly predominate over any individual issues that may exist. Furthermore, the "common nucleus of

operative fact" is that all Class members were subject to NYU's standardized payment system, payment process, application, enrollment, acceptance, and registration. Furthermore, NYU promised all students access to the facilities, services, and amenities paid for by fees monies. Exhibit 2. Thus, all Class members were subject to the same contractual agreement—receiving in-person and on-campus access to and use of educational services, facilities, and amenities for the entire Spring 2020 semester when the Class members paid fees. Additionally, Defendant's conduct was identical and uniform across all of its campuses and students. Thus, Defendant's defenses and excuses for the breach of contract in the Spring 2020 is identical to all Class members.

Therefore, predominance is satisfied because the critical facts and legal issues to this case are virtually identical for every Class member.

### 2)  A Class Action is the Superior Procedure for Managing this Case.

Federal Rule of Civil Procedure 23(b)(3) "permits class certification only where "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Restasis Antitrust Litigation*, 335 F.R.D. 1, 39 (E.D. N.Y. 2020) (internal citations omitted). Of the four factors listed in Rule 23(b)(3), the "most critical [factor] in determining whether a class action is a superior means of adjudication is manageability." *Adkins v Morgan Stanely*, 307 F.R.D. 119, 147 (S.D. N.Y 2015) (internal citations omitted). However, the Second Circuit has "cautioned that 'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d. 430, 463 (S.D.N.Y. 2018).

The core purpose of "the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or

her rights.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (internal

citations omitted). Without a means of an adequate aggregate action, individuals would be unable

to seek relief for their injuries as the cost of litigation would exceed their potential recovery. *See*

*Amgen*. This is the case here.

In the present case, proceeding as a class action is the best and most efficient method of

adjudicating this case. As set forth in the Complaint, there are over 50,000 students enrolled at

NYU for the Spring 2020 semester. It is clear that litigating this case as a class action is more

practical than litigating 50,000 individual cases. Furthermore, requiring 50,000 individual cases

would be unfeasible as the individual damages would likely not justify pursuing the lengthy and

complex prosecution. Additionally, Plaintiff is unaware of any other action or controversy alleging

the same relief on behalf of the class against NYU. Moreover, this Court is a desirable court to

pursue this action as NYU is headquartered in this District. Finally, there are no obstacles that will

be encountered in the management of this class action because this case is a straightforward breach

of contract claim. Thus, a class action is the most practical, efficient, and fair method of

adjudication. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402

(2010) (Rule 23 is "designed to further procedural fairness and efficiency."). Accordingly, a class

action is the superior procedure for managing this case; satisfying Rule 23(b)(3)'s superiority

requirement.

### D. THE CLASS ALSO SATISFIES RULE 23(b)(2)

A class action can be certified, under Rule 23(b)(2), where "the party opposing the class

has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.

R. Civ. 23(b)(2); see also *Wal-Mart Stores, Inc. v. Dukes, et al.*, 564 U.S. 338, 360 (2011)

(certification under Rule 23(b)(2) is appropriate "when a single injunction or declaratory judgement would provide relief to each member of the class"). As the Supreme Court has explained, "[t]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all the class members or as to none of them.'" *Dukes*, at 360 (internal citations omitted).

Unlike Rule 23(b)(3), when seeking certification under Rule 23(b)(2) "there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident." *Dukes*, at 362–363. Rather, class certification under Rule 23(b)(2) is sufficient if class members complain of a pattern or practice that is applicable to the class as a whole. See 2 Newberg on Class Actions § 4:26 (5th ed. 2020) ("Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary adjudication is not only preferable, but it is also essential.").

Here, all members of the proposed Class, and Plaintiff, all suffered the same harm arising from the University's uniform conduct and policies. The University's refusal to issue prorated refunds for fees monies collected for in-person, on-campus instruction, educational services, facilities, and activities for the Spring 2020 semester is the uniform misconduct that is applicable to all proposed Class members. To rectify this harm suffered by all proposed Class members, Plaintiff, individually and on behalf of all others Class members, seeks declaratory relief, asserting that NYU has wrongfully retained the monies that all Class members paid in the form of fees, and enjoining NYU from retaining the prorated, unused portion of those fees. This is the type of "indivisible injunction [that] benefit[s] all its members at once", which satisfies Rule 23(b)(2). Therefore, Plaintiff has satisfied the class certification requirement under Rule 23(b)(2).

**E.     ALTERNATIVELY, CLASS CERTIFICATION UNDER RULE 23(c)(4) is APPROPRIATE**

Courts may, in the alternative, allow claims to be adjudicated as a class action under Federal Rule of Civil Procedure 23(c)(4). Class certification under Rule 23(c)(4) is appropriate "to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement." *In re Nassau Cty. Strip Search Cases,* 461 F.3d. 219, 225 (2nd Cir. 2006) (internal citations omitted). However, "[c]ourts should use Rule 23(c)(4) only 'where resolution of the particular common issues would materially advance the disposition of the litigation as a whole.'" *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013) (internal citations omitted).

In this case, the University's liability issues are best litigated in a class action. For the purposes of alternatively certifying a class under Rule 23(c)(4), "liability issues" would include all substantive elements of the Plaintiff's, and proposed Class members', breach of contract and unjust enrichment claims for tuition and fees. *See In re Motor Fuel Temperature Sales Practices Litig.*, MDL No. 1840, 2013 WL 1397125 (D. Kan. Apr. 5, 2013) (allowing class certification as to only liability and leaving damages for a separate, individual determination). Thus, if the Court finds that the Rule 23(b)(3)'s predominance requirement is not met, which for the reasons stated above would not be appropriate, Rule 23(c)(4) authorizes the Court to certify the class and proceed with Class adjudication of NYU's liability. Therefore, if the Court finds that the proposed Class does not meet the requirements of Rule 23(b)(3), this Court can, alternatively, certify the proposed Class under Rule 23(c)(4).

**F.**      **THE COURT SHOULD APPOINT PLAINTIFF AS CLASS REPRESENATIVE AND APPOINT UNDERSIGNED COUNSEL AS CLASS COUNSEL**

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiff requests his counsel to be appointed to represent the Class and be identified as "Class Counsel." Under Rule23(g)(1), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). The factors that courts must consider when appointing class counsel are outlined and detailed below.

1) **Factor 1: The work counsel has done in identifying or investigating potential claims in the action.**

Proposed Class Counsel has thoroughly investigated the claims at issue, investigated the composition of the proposed Class, and filed the Amended Class Action Complaint that has survived a Rule12(b)(6) motion to dismiss. *See* Dkt. No. 28 (Order denying Motion to Dismiss in part) and Dkt. No. 4 (Complaint). Proposed Class Counsel has investigated publicly available documents and has identified potential publicly available documents and records that form part of the student-university relationships throughout the pleadings.

The Anastopoulo Law Firm has dedicated significant resources to represent Plaintiff and the Class as a whole. Proposed Class Counsel has examined publicly available documents and records, documents made available throughout the discovery process, prepared Plaintiff for deposition, defended the deposition of Plaintiff, and met and conferred with Defense Counsel.

2) **Factor 2: Counsels' experience in handling class actions, other complex litigation, and the types of claims asserted in the action.**

Proposed Class Counsel has extensive experience in handling class actions and other complex litigation as highlighted by the firm's biographies and resumes attached as Exhibit A. The Anastopoulo Law Firm is currently litigating over 30 college COVID-19 tuition and fee refund cases. *See* Willey Decl., ¶ 6. Currently, the Anastopoulo Law Firm is lead counsel in 10 out of the 30 cases. *See* Willey Decl., ¶ 5.

**3) Factor 3: Counsel's knowledge of the applicable law.**

As highlighted by the firm's resumes and biographies, Proposed Class Counsel includes experienced Counsel who are well versed in class action litigation, contracts litigation, quasi-contract litigation, and the college tuition/fees refund litigation ongoing across the country. Thus, Proposed Class Counsel's experience in litigating over 30 COVID-19 tuition and fee refund cases is substantial and satisfies Rule 23(g)'s requirement.

**4) Factor 4: The resources that counsel will commit to representing the class.**

Proposed Class Counsel has and will continue to dedicate substantial resources to the adjudication of this action, including retaining all necessary experts, and incurring the costs of those experts for the successful litigation of this action. Proposed Class Counsel has established a dedicated team of in-house attorneys to specifically litigate COVID-19 tuition and fee refund cases. *See* Willey Decl., ¶ 13. Furthermore, Proposed Class Counsel is self-funding and is committed to using significant resources to continue to fully litigate this case. *See* Willey Decl., ¶ 16.

<u>**CONCLUSION**</u>

This case is well suited for class litigation. The proposed class meets all the requirements of Rule 23 to be certified as a class. The class meets the tests for numerosity, commonality, and typicality. Common questions of law and fact predominate over all individual questions. Furthermore, litigation as a class action is the superior method to filing over 50,000 individual actions seeking the identical relief resulting from the same actions taken by NYU. Additionally, the Class representative is adequate and has retained attorneys who have significant experience and will vigorously litigate this action on behalf of all Class members. Thus, Plaintiff's proposed

Class must be certified. For all reasons stated above, Plaintiff respectfully requests the Court to certify the above described Class.

Dated: 3/21/2022                                        Respectfully Submitted,


                                        /s/ *Blake G. Abbott*
                                        Blake G. Abbott (*Pro Hac Vice*)
                                        Paul J. Doolittle (*Pro Hac Vice*)
                                        Eric M. Poulin (*Pro Hac Vice Forthcoming*)
                                        Roy T. Willey, IV (*Pro Hac Vice Forthcoming*)
                                        **ANASTOPOULO LAW FIRM, LLC**
                                        32 Ann Street
                                        Charleston, SC 29403
                                        (P):  (843) 614-8888
                                        (F):  (843) 494-5536
                                        Email: eric@akimlawfirm.com
                                               roy@akimlawfirm.com
                                               blake@akimlawfirm.com
                                               pauld@akimlawfirm.com

                                                -AND-


                                        Edward Toptani (ct 6703)
                                        **Toptani Law Offices**
                                        375 Pearl St
                                        Ste 1410
                                        New York, NY 10038
                                        (P): 212-699-8930
                                        Email: edward@toptanilaw.com


                                        **ATTORNEYS FOR PLAINTIFF**
                                        *Admitted Pro hac vice*