# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

NELCY MABEL GARCÍA DE LEÓN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NEW YORK UNIVERSITY,

Defendant.

Case No. 1:21-cv-5005-CM

## DEFENDANT NEW YORK UNIVERSITY'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**DLA PIPER LLP (US)**

Brian S. Kaplan
Keara M. Gordon
Colleen Carey Gulliver
Rachael C. Kessler
1251 Avenue of the Americas
New York, New York 10020-1104
Phone: (212) 335-4500
Facsimile: (212) 335-4501
brian.kaplan@us.dlapiper.com
keara.gordon@us.dlapiper.com
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

*Attorneys for Defendant New York University*

## TABLE OF CONTENTS

**Page**

FACTS ........................................................................................................................ 4

  A. Different NYU Students Paid a Wide Variety of Different Fees............... 4

    1. Registration and Services Fees ....................................................... 4

    2. School- and Course-Based Fees...................................................... 5

  B. Despite Covid, NYU Continued to Provide Services Associated
    with R&S Fees. ............................................................................................ 6

  C. NYU Refunded Fees for Services or Equipment That Could Not
    Be Provided.................................................................................................. 7

  D. The Putative Class Representative .............................................................. 7

    1. Conflicting Facts Regarding the Plaintiff's Purported Use
      of NYU's NYC Campus and Services........................................... 8

    2. Conflicting Facts Regarding the Plaintiff's Purported Use
      of NYU Services During the Spring 2020 Semester. ................... 11

    3. The Plaintiff Failed to Disclose All of Her Law Firms. .............. 12

    4. The Plaintiff's Discovery Failures ............................................... 13

    5. The Plaintiff's and Counsel's Bad Faith Filing ........................... 14

ARGUMENT ............................................................................................................ 15

 I. THE PROPOSED CLASS is not ascertainable. ................................................. 15

 II. THE PLAINTIFF CANNOT SATISFY RULE 23(a). ...................................... 17

  A. Commonality And Typicality Are Lacking. ............................................. 17

    1. Commonality.................................................................................. 17

    2. Typicality ....................................................................................... 19

 III. THE PLAINTIFF IS AN INADEQUATE CLASS REPRESENTATIVE
   AND PROPOSED CLASS COUNSEL IS SIMILARLY INADEQUATE. ....... 20

  A. The Plaintiff Has a Substantial Conflict with the Class............................ 21

  B. The Plaintiff and Her Counsel Acted in Bad Faith. ................................. 22

  C. The Plaintiff Lacks Credibility. ................................................................ 24

  D. The Plaintiff and Her Counsel Flouted Her Discovery Obligations. ....... 25

  E. The Proposed Class Counsel Lacks Class Action Experience................. 26

 IV. The PLAINTIFF CANNOT SATISFY THE STANDARDS FOR
   CERTIFICATION UNDER 23(b)(3). ............................................................. 27

  A. Individual, Rather Than Common, Issues Predominate. .......................... 27

    1. Individual Issues Predominate Regarding Class
      Membership. .................................................................................. 28

2.     Individual Issues Predominate Regarding the Contract Claim. ................................................................................ 29

     a.     The Terms of Any Contract is an Individual Issue. ......... 29

     b.     Privity and Standing Are Individual Issues. .................... 31

     c.     Breach, Injury, and Causation Are Individual Issues. ................................................................................ 32

3.     Individual Issues Predominate Regarding Unjust Enrichment. ............................................................................ 34

4.     The Plaintiff Does Not Establish that Damages Are Capable of Measurement on a Class-wide Basis. ....................... 36

V.     A Class Action Is Not Superior. ................................................... 37

VI.     A Class Cannot Be Certified Under Rule 23(b)(2). .............................. 39

VII.     A Class Cannot Be Certified Under Rule 23(b)(4). .............................. 40

CONCLUSION ................................................................................................ 40

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allergan PLC Sec. Litig.*,
   2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) (McMahon, J.)..............................17, 20, 21, 22

*In re Aluminum Warehousing Antitrust Litig.*,
   336 F.R.D. 5 (S.D.N.Y. 2020) ..................................................................................15, 36

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................27, 28

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)........................................................................................................28

*In re Amla Litig.*,
   282 F. Supp. 3d 751 (S.D.N.Y. 2017)............................................................................40

*Amorosa v. Ernst & Young LLP*,
   2010 WL 245553 (McMahon, J.) (S.D.N.Y. Jan. 20, 2010)...........................................22

*Askew v. Southern Pan Employee Stock Ownership Plan*,
   2019 WL 12536148 (N.D. Ga. June 27, 2019)........................................................23, 24, 38

*Auscape Int'l v. Nat'l Geo. Enters., Inc.*,
   2003 WL 23531750 (S.D.N.Y. July 25, 2003) ........................................................23, 26, 30

*Baffa v. Donaldson, Luftkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)..............................................................................................20

*Bergeron v. Rochester Inst. of Tech.*,
   2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020).................................................................32

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006)............................................................................................34

*Bohn v. Pharmavite, LLC*,
   2013 WL 4517895 (C.D. Cal Aug. 7, 2013).....................................................................25

*Bondi v. New Rochelle Hotel Assocs.*,
   2018 WL 7246962  (S.D.N.Y. Dec. 7, 2018), *R. & R. adopted*, 2019 WL
   464821 (S.D.N.Y. Feb. 6, 2019) .....................................................................................38

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010)............................................................................................19

*Calabrese v. CSC Holdings, Inc.*,
  2009 WL 425879 (E.D.N.Y. Feb. 19, 2009)...........................................................................37

*Calvo v. City of N.Y.*,
  2018 WL 1633565 (S.D.N.Y. April. 2, 2018) ........................................................................26

*Cohn v. Mass Mut. Life. Ins. Co.*,
  189 F.R.D. 209 (D. Conn. 1999)............................................................................................37

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).............................................................................................15, 28, 36, 37

*Crab House of Douglaston Inc. v. Newsday, Inc.*,
  2013 WL 1338894 (E.D.N.Y. Mar. 29, 2013)........................................................................35

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
  662 F.3d 913 (7th Cir. 2011) ................................................................................................23

*Darvin v. Int'l Harvester Co.*,
  610 F. Supp. 255 (S.D.N.Y. 1985).........................................................................................26

*DiDonato v. GC Servs. Ltd. P'ship*,
  2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021)........................................................................38

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
  631 F.3d 42 (2d Cir. 2011)....................................................................................................33

*Doe v. Univ. of the S.*,
  687 F. Supp. 2d 744 (E.D. Tenn. 2009).................................................................................31

*Dungan v. Acad at Ivy Ridge*,
  344 F. App'x 645 (2d Cir. 2009) ..........................................................................................40

*Dunnigan v. Metro. Life Ins. Co.*,
  214 F.R.D. 125 (S.D.N.Y. 2003) ...........................................................................................38

*Epstein v. JPMorgan Chase & Co.*,
  2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ........................................................................34

*Espejo v. Cornell Univ.*,
  523 F. Supp. 3d 228 (N.D.N.Y. 2021)...................................................................................32

*Evans v. Brigham Young Univ.*,
  2022 WL 596862 (D. Utah Feb. 28, 2022)..............................................................15, 16, 29

*Evans v. IAC/Interactive Corp.*,
  244 F.R.D. 568 (C.D. Cal. 2007)............................................................................15, 27, 29

iv

*Fiore v. Univ. of Tampa*,
   2021 WL 4925562 (S.D.N.Y. Oct. 21, 2021) ................................................................32, 33

*Fishon v. Peloton Interactive, Inc.*,
   2022 WL 179771 (S.D.N.Y. Jan. 19, 2022) .................................................................21, 24

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................................36

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
   270 F.R.D. 150 (S.D.N.Y. 2010) ................................................................................20, 24

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2016) ..............................................................................................28

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) .............................................................................................23

*Haag v. Hyundai Motor Am.*,
   330 F.R.D. 127 (W.D.N.Y. 2019) ......................................................................................40

*Horowitz v. Nat'l Gas & Elec.*,
   LLC, 2021 WL 4478622 (S.D.N.Y. Sept. 30, 2021) .........................................................33

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) ......................................................................................21

*In re Internap Network Servs. Corp. Sec. Litig.*,
   2012 WL 12878579 (N.D. Ga. Aug. 23, 2012) .................................................................21

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*,
   2012 WL 370319 (W.D.N.Y. Feb. 3, 2012) ................................................................29, 30

*Kaczmarek v. International Business Machines Corp.*,
   186 F.R.D. 307 (S.D.N.Y. 1999) ......................................................................................30

*Kempner v. Town of Greenwich*,
   249 F.R.D. 15 (D. Conn. 2008) .........................................................................................34

*Kingsepp v. Wesleyan Univ.*,
   142 F.R.D. 597 (S.D.N.Y. 1992) ......................................................................................20

*Kline v. Wolf*,
   88 F.R.D. 696 (S.D.N.Y. 1981), *aff'd*, 702 F.2d 400 (2d Cir. 1983) ...............................26

*Kulig v. Midland Funding, LLC*,
   2014 WL 6769741 (S.D.N.Y. Nov. 20, 2014) ..................................................................21

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ................................................................................20

*Marshall v. Hyundai Motor America*,
   334 F.R.D. 36 (S.D.N.Y. 2019) (McMahon, J.) ..................................28, 32, 40

*Martin v. JTH Tax, Inc.*,
   2013 WL 442425 (D.S.C. Feb. 5, 2013) .............................................................17

*Mazzei v. Money Store*,
   288 F.R.D. 45 (S.D.N.Y. 2012), *aff'd*, 829 F.3d 260 (2d Cir. 2016) ...................38

*Mazzei v. Money Store*,
   829 F.3d 260 (2d Cir. 2016) ..........................................................................28, 32

*McDaniel v. Cnty. of Schenectady*,
   2005 WL 1745566 (N.D.N.Y July 21, 2005) .....................................................26

*In re MTBE Prods. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002) .......................................................................40

*Mullaney v. Delta Air Lines, Inc.*,
   258 F.R.D. 274 (S.D.N.Y. 2009) (McMahon, J.) ...............................................28

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ..............................................................................27

*MyPlayCity, Inc. v. Conduit Ltd.*,
   2013 WL 150157 (S.D.N.Y. Jan. 11, 2013) (McMahon, J.) ...............................37

*Nationwide Life Ins. Co. v. Haddock*,
   460 F. App'x. 26 (2d Cir. Feb. 6, 2012) .............................................................39

*Newman v. RCN Telecom Servs., Inc.*,
   238 F.R.D. 57 (S.D.N.Y. 2006) .........................................................................20

*Norman v. Arcs Equities Corp.*,
   72 F.R.D. 502 (S.D.N.Y. 1976) .........................................................................25

*Nypl v. J.P. Morgan Chase & Co.*,
   2022 WL 819771 (S.D.N.Y. Mar. 18, 2022) ..........................................15, 33, 38

*O'Gara v. Countrywide Home Loans, Inc.*,
   282 F.R.D. 81 (D. Del. 2012) .......................................................................32, 33

*Oakley v. Verizon Comm'ns, Inc.*,
   2012 WL 335657 (S.D.N.Y. Feb. 1, 2012) (McMahon, J.) .................................19

*Pagan v. Abbott Labs., Inc.*,
 287 F.RD. 139, 148-49 (E.D.N.Y. 2012)...........................................................................18

*Patel v. Univ. of Vt. & State Agric. Coll.*,
 2021 WL 1293447 (D. Vt. Apr. 7, 2021)...........................................................................34

*Petrobras*, 862 F.3d at 268 .............................................................................15, 28, 32

*Powell v. Carey Int'l, Inc.*,
 2006 WL 4562105 (S.D. Fla. Mar. 27, 2006)....................................................................23

*Quinonez v. Pharm. Specialties, Inc.*,
 2017 WL 4769436 (C.D. Cal. Aug. 10, 2017)...................................................................26

*Rambarran v. Dynamic Airways, LLC*,
 2015 WL 4523222 (S.D.N.Y. July 27, 2015).....................................................................19

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018)..............................................................36, 37

*Rynasko v. N.Y. Univ.*,
 2021 WL 1565614 (S.D.N.Y. Apr. 21, 2021).....................................................................32

*Savino v. Comput. Credit*,
 164 F.3d 81 (2d Cir. 1998)................................................................................................24

*Shiflett v. Viagogo Entertainment Inc.*,
 2021 WL 4948144 (M.D. Fla. July 16, 2021) ...................................................................17

*Sicav v. Wang*,
 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ......................................................................36

*Spagnola v. Chubb Corp.*,
 264 F.R.D. 76 (S.D.N.Y. 2010), *aff'd*, 531 F. App'x 93 (2d Cir. 2013) ....................24, 29, 38

*Spread Enters. Inc. v. First Data Merchant Services Corp.*,
 298 F.R.D. 54 (E.D.N.Y. 2014)................................................................................29, 38, 39

*Swan Media Grp., Inc. v. Staub*,
 841 F. Supp. 2d 804 (S.D.N.Y. 2012)................................................................................37

*Sweet v. Pfizer*,
 232 F.R.D. 360 (C.D. Cal. 2005)........................................................................................26

*In re Synovus Financial Corp.*,
 2013 WL 12126755 (N.D. Ga. Mar. 7, 2013)....................................................................22

*Taylor v. Zucker*,
 2015 WL 4560739 (S.D.N.Y. July 27, 2015) (McMahon, J.) ...............................................19

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ......................................................................................33

*Tropical Sails Corp. v. Yext, Inc.,*
    2017 WL 1048086 (S.D.N.Y. Mar. 17, 2017) ......................................................35

*Tyson Foods, Inc. v. Bouaphakeo,*
    577 U.S. 442 (2016) (Roberts, C.J., concurring) ...........................................28, 33

*Vaccariello v. XM Satellite Radio,*
    295 F.R.D. 62 (S.D.N.Y. 2013) ....................................................................34, 35

*Vega v. T-Mobile USA, Inc.,*
    564 F.3d 1256 (11th Cir. 2009) ....................................................................35, 40

*Vincent v. Money Store,*
    304 F.R.D. 438 (S.D.N.Y 2015) ........................................................................23

*Vu v. Diversified Collection Servs., Inc.,*
    293 F.R.D. 343 (E.D.N.Y. 2013) ........................................................................17

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................. *passim*

*Weiner v. Snapple Bev. Corp.,*
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...........................................34, 35, 36

*Wing v. Metro. Life Ins. Co.,*
    2007 WL 9814564 (S.D.N.Y. May 31, 2007) .....................................................29

**Other Authorities**

Fed. R. Civ. P. 23(a)(4) ...................................................................................20

Fed. R. Civ. P. 23(b)(3) ...................................................................................27

Fed. R. Civ. P. 23(c)(4) ...................................................................................40

Fed. R. Civ. P. 23(b)(2) ................................................................................4, 39

Fed. R. Civ. P.  23(b)(4) ...............................................................................4, 40

In early 2020, Covid-19 rocked the world, forcing New York University ("NYU") to transition to remote instruction that March.  Notwithstanding significant logistical effort and expense, NYU remained committed to delivering a world-class education and supporting its students through a panoply of services.  And it did.  Faculty delivered NYU's intellectually stimulating learning environment in new ways, and students continued to benefit from those efforts.  NYU staff worked around the clock to reach and support students through its services, including: unprecedented information technology support; tele-health services, including mental health counseling; career counseling, instruction, and events; connection through student groups, activities, virtual meditation and yoga courses, and countless other student life events; and logistical support to navigate financial aid, class, and registration information – to name just a few.  And, at the end of the semester, thousands of NYU students, including the plaintiff, Nelcy García De León, received educational credits and earned their degrees – despite the pandemic.

Yet six different sets of plaintiffs filed putative class actions against NYU seeking the return of tuition and fees for the Spring 2020 Semester.  All six cases relating to tuition have been dismissed, including the plaintiff's here.  Acknowledging that the plaintiff's claims regarding fees she seeks to have refunded "verge on conclusory," this Court allowed the plaintiff's claim that "NYU breached a contract to provide access to some on-campus facilities and activities in exchange for the fees that she paid," as well as a related unjust enrichment claim, to go forward. (Dkt. No. 28 at 19-20, 26-27, 28.)  But, the Court stated that it was "imperative" that it "ascertain as quickly as possible whether this action can be maintained as a class action." (*Id.* at 29.)

For multiple, independent reasons, it cannot.  What fees, if any, a student pays depends on her school, program, and the classes she takes – they are not uniform and there is no uniform description of all fees.  A predicate of the plaintiff's claim is that the transition to remote learning

1

made access to services and facilities unavailable, but that predicate is false.  Most of the fees did not promise "access," and services continued.  Some fees – for example, Registration and Services Fees ("R&S Fees") – are the same regardless of whether the student enrolled in online or in person classes, including for students in jurisdictions outside of New York *who never intended to access NYU's facilities.*  That fee did not promise "access" and is not dependent on access or usage.  Rather, it partially funds a myriad of student services, some of which some students will use and others will not.  After Covid hit, NYU quickly undertook a detailed analysis of all Spring 2020 program- and class-based fees and refunded those where what was promised could not be provided.

Class certification should be denied first because the putative class is not ascertainable.  To be certified, the plaintiff must show that identifying the class members using objective criteria is possible.  Here, it is not.  The proposed class definition is dependent upon identifying the "payors" of the fees – which could be the student, or her parents, grandparents, employer, or others.  Pointing to the number of students at NYU does not identify the class, as NYU's records for all of its over 50,000 students do not identify who actually paid the fees; instead, identifying that information would require manual, individualized searches of tens of thousands of students' files, and even then, still may not be ascertainable.  (Section I.)

Second, commonality and typicality are not satisfied here.  Among other things, while the Complaint focuses on NYU's New York City ("NYC") campus and the services available there, the plaintiff did not take a single class in NYC; she enrolled at the Rockland County campus, 45 minutes to an hour away, and NYU's contemporaneous records show she made virtually no use of the NYC Campus and its facilities.  The experience of a graduate student in Rockland is very different than that of an undergraduate in NYC, or California, or elsewhere.  (Section II.)

Third, a class cannot be certified because the named plaintiff and her counsel are

inadequate fiduciaries for the putative class.  For example, the plaintiff asks this Court to appoint the Anastopoulo Law Firm as class counsel, but the brief, her declaration, and counsel's declaration fail to advise the Court that her engagement letter is with a different law firm and that she is required to share any recovery with yet a third firm.  She and counsel filed a Complaint that this Court found "qualifies as a bad faith pleading" because it failed to disclose basic facts regarding the plaintiff's experience at NYU that were readily ascertainable.  (Dkt. No. 28 at 17-18.)  The plaintiff's credibility is very much in doubt since her testimony on key factual issues is flatly and repeatedly contradicted by NYU's contemporaneous documents.  (Section III.)

Fifth, there is no common proof of a uniform contract that was undoubtedly breached.  All the plaintiff proffers is five webpages, none of which generate common answers to any of the following questions:  What fee was paid?  Who paid it?  How was the fee described?  What was the fee for?  Was the service provided?  If not, was the fee refunded?  If a service was not provided, did the student ever use it before?  Was there any injury?  How can any alleged class-wide damages be calculated?  There is no uniform answer to these questions:  different students were charged different fees; the payor could have been the student, her parent, or someone else; different fees were described differently – for example, NYU's Silver School of Social Work ("NYU Silver") expressly described R&S Fees at NYU Silver as "nonreturnable"; most services continued; different students used different services; and different students may have had different expectations, as some students studying far outside NYC are also charged R&S Fees, yet have no expectation of setting foot on the NYC campus.  Individualized issues predominate.  (Section IV.)

Sixth, the class device is not superior both because of these individualized issues and because, since class membership is dependent upon the failure to obtain a service that NYU was allegedly obligated to provide, the class definition is an impermissible fail-safe class.  (Section V.)

Seventh, the plaintiff's disgorgement claim for monetary relief cannot be certified under Rule 23(b)(2).  (Section VI.)  Finally, the plaintiff cannot claim that an issue class is appropriate under Rule 23(b)(4) by arguing that the myriad of issues above can be resolved within a single-issue class.  (Section VII.)  Accordingly, the motion for class certification should be denied.

## FACTS

### A.     Different NYU Students Paid a Wide Variety of Different Fees.

Many of NYU's 18 different schools and colleges have their own fee structures, admissions processes, and websites highlighting the distinct aspects unique to them.  (Declaration of Aminda Heckman ("Heckman Decl.") ¶¶ 4-5; (Declaration of Anthony Bonano ("Bonano Decl.") ¶ 6); Exs. 1-5.  NYU assesses each student's fees based on her particular circumstances, including the school within NYU, the program, and the particular courses. (*Id.*)

#### 1.     Registration and Services Fees

Whether a student pays R&S Fees or how much she pays depends on the particular school, college, and/or program in which she is enrolled and the number of credits she takes that semester. (Bonano Decl. ¶ 7.)  The plaintiff paid a nonreturnable Social Work Graduate R&S Fee of $1,361 for the Spring 2020 semester, based upon the number of credits she took and the amount that her school, NYU Silver, charged per credit.  (*Id.*)  Other students paid different amounts.  (*Id.*)  Some students do not pay any R&S Fee at all.  (*Id.*)  Students in NYU's online programs also pay R&S Fees that are, with only one exception, charged at the same rate as R&S Fees for similar in-person programs; these students' location and method of instruction is irrelevant.  (*Id.* ¶ 8-9.)

R&S Fees are described in various places on NYU's website, including on certain webpages maintained by NYU's various colleges, schools, programs, and institutes.  (*See* Exs. 6-16.)  NYU Silver's webpage has described R&S Fees as "nonreturnable" since at least 2017.  (*See* Exs. 16, 6).  Certain other schools, colleges, and programs make similar statements on their

4

websites.  (*See* Exs. 13, 14.)  Others do not describe R&S Fees.  (*See* Exs. 7, 9, 10 11, 12, 15.)

The plaintiff alleged that NYU discloses to its students that R&S Fees "furnish resources to fund a portion of the budgets for a variety of services, operations, and activities that serve students and enhance University life in support of [NYU's] academic program."  (Dkt. No. 37 at 4; Dkt. No. 37-4.)  NYU uses the money generated to partially fund dozens of different services, including: Information Technology services ("IT"); the NYUHome and NYU Classes web portals; the Student Health Center ("Health Center"); the Wasserman Center for Career Development ("Wasserman Center"); the Moses Center for Student Accessibility ("Moses Center"); the Global Center for Academic and Spiritual Life ("Spiritual Life"); student clubs and student affairs; the Office of the University Registrar ("Registrar"); the Bursar's Office; various fitness facilities; the Bookstore; and more.  (Declaration of Stephanie Pianka ("Pianka Decl.") ¶ 9.) Students who do not pay R&S Fees nonetheless have access to these services.  (*Id.* ¶10.)

The money that NYU collects through R&S Fees is insufficient to cover the amount it costs NYU to operate all of those services.  (*Id.*)  Additionally, NYU incurs other costs, including for Campus Safety (which exceeds $40 million annually) and school-based activities and services offered by each school's student affairs department.  (*Id.*)  NYU funds those and other services from a variety of sources apart from R&S Fees.  (*Id.*).

## 2.      School- and Course-Based Fees

Whether a student paid any one of NYU's over 60 school- and course-based fees depends upon her particular college, school, or program, and the classes she was enrolled in.  (Bonano Decl. ¶ 7; Exs. 17, 18.)  For example, some students and not others paid a Creative Arts Therapy fee ("Art Supply Fee"), a Dance Insurance Fee, a Photography Course Lab Fee, or a Ticket Fee. (Pianka Decl. ¶ 4.)  The amount and purpose of the fees paid, and whether any portion was refunded after Covid struck, varies by student.  (*See id.*; *see also* Exs. 19, 17.)

NYU students are assessed the various fees discussed above, but, in some cases, the student will look to parents, grandparents, employers, or others to actually pay the money. (Bonano Decl. ¶ 10.) Charges can also be funded in whole or in part by scholarships or loans. (*Id.*) NYU maintains account statements for each individual student, which would reflect the amount billed and funds credited toward their bill, where applicable. (*Id.* ¶ 11.) NYU's account statements do not specify whether the student versus a parent or other third party paid. (*Id.*) NYU maintains records in a format that can generate lists of students who paid tuition and fees using certain financial aid (e.g., scholarships), students for whom their employer served as third-party payor through a special arrangement, and whether an account has a zero balance. (*Id.*) Otherwise, there is no mechanism other than manual, individualized, student-by-student review to determine how particular financial aid awards were applied, any credits to an account, and whether any records exist that would specify the form of payment, including who made each payment. (*Id.*)

**B.      Despite Covid, NYU Continued to Provide Services Associated with R&S Fees.**

The transition to remote learning did not stop NYU from providing students with services. NYU continued to provide a myriad of services funded in part through R&S Fees, including:  IT (Exs. 20, 21; García, 153:14-154:6); the Bursar's Office (Bonano Decl. ¶ 12); NYU Classes (García, 154:7-14); student health services and counseling, including mental health services (Declaration of Zoe Ragouzeos, PhD ("Ragouzeos Decl.") ¶¶ 8-9; Exs. 22-32); career counseling (Declaration of Gracy Sarkissian ("Sarkissian Decl.") ¶ 6; Ex. 25, 33, 34-35); accessibility services (Ex. 25); Spiritual Life (Declaration of Melissa Carter ("Carter Decl.") ¶ 7; Ex. 36, 37); student clubs (Ex. 25); the Registrar (Lam Decl. ¶ 6); the Office of Sponsored Programs (Declaration of Nancy Daneau ("Daneau Decl.") ¶ 5); International Student Services (Ex. 25); the Library (Declaration of Austin Booth ("Booth Decl.") ¶ 9; Ex. 38); sports (Declaration of Stuart Robinson ("Robinson Decl.") ¶ 8; Ex. 39); and the Bookstore (Declaration of Owen Moore ("Moore Decl.")

¶¶ 5, 7-8; Ex. 40).

### C.    NYU Refunded Fees for Services or Equipment That Could Not Be Provided.

After Covid struck, NYU conducted an extensive proactive analysis of all Spring 2020 school- and course-based fees billed by the Bursar and issued full or *pro rata* refunds for fees where students did not "receive[] all or part of the services, supplies, or equipment associated with the fee." (Ex. 17; Pianka Decl. ¶ 7.)  These refunds differed among the different schools, colleges, programs, and courses.  (Ex. 18.)   NYU refunded a *pro rata* portion of fees related to housing and dining.  (*Id*.)   R&S Fees generally are nonrefundable and NYU continued to provide numerous services associated with them, so it did not refund R&S Fees.  (Pianka Decl. ¶ 10-11.)

### D.    The Putative Class Representative

The plaintiff is a former NYU graduate student who obtained her Master of Social Work ("MSW") degree from NYU Silver in Spring 2020.  (Dkt. No. 28 at 7 .)  She chose to enroll at NYU Silver's Rockland County campus rather than NYU's campus in NYC.  (García, 20:15-21:4, 230:7-13; Ex. 1.)  The plaintiff has lived, attended school, and worked in Rockland County for the past 17-18 years.  (García, 10:1-4; 11:6-11; 12:16-13:4; 17:25-21:4.)  The MSW program is NYU's only program in Rockland, and only 88 students enrolled there in Spring 2020.  (Heckman Decl. ¶ 7.)

The only two fees the plaintiff paid for the Spring 2020 semester were an R&S Fee and the $30 Art Supply Fee for art supplies that she used in her Creative Arts Therapy in Clinical Social Work course and were made available after Covid.  (García, 222:3-24; Exs. 41-42.)  She did not pay any dining or housing fees.  (*Id.* 234:11-16.)   Although the plaintiff testified that she understood that her fees covered "[c]omputer labs, access to the library, access to the bookstore, access to the fitness center, access to all the offices that I was supposed to have access to, access to events, access to the professional development office" (*id.* 36:10-37:8), she could not recall or

7

identify any particular statement or publication from NYU that led her to such an understanding (*id.* 38:19-39:3), and she has not produced any documents that show NYU making such a statement.  The plaintiff also has been unable to state with any specificity the fees for which she is seeking a refund.  (*See* Exs. 43, 45; García, 236:18-242:23.)  She further claimed to have been unaware that NYU had refunded certain fees for the Spring 2020 semester.  (*Id.* 236:6-10.)

### 1.  Conflicting Facts Regarding the Plaintiff's Purported Use of NYU's NYC Campus and Services.

The plaintiff provided inconsistent accounts of her use of NYU's NYC campus.  When first asked to "[i]dentify the date(s) and purpose(s) of any [defined as any or all] visit [she] made to NYU's NYC campus during" her enrollment, the plaintiff stated that "she visited NYU's Manhattan campus during orientation on August 27, 28, and 29, 2019[.]" (Ex 43 at 7.)  Yet, during her deposition, the plaintiff testified that she attended "more than ten" events held at NYU's NYC campus during the Fall 2019 semester (García, 61:23-62:6) and that she would often go to the NYC campus to complete her schoolwork and to print documents (*id.* 74:5-75:11; 311:20-315:9), despite the fact that it would take her "45 minutes to an hour" each way to get to NYU and back and she had to pay a toll and for gas (*id.* 54:17-23; 85:14-17; 107:11-13).  When confronted with her conflicting answers, the plaintiff initially responded, "I'm not answering" and then attempted to explain away her inconsistent testimony by stating that "[j]ust because it is not written here doesn't mean that I didn't go."  (*Id.* 312:2-315:9; Ex. 44.)  Later, the plaintiff amended her interrogatory answers to state that "there are other dates that she visited NYU's Manhattan campus that she cannot remember."  (Ex. 45 at 8.)

NYU retains records of student access to buildings on its NYC campus.  Students must swipe or tap their NYU ID cards at turnstiles or gates near many building entrances, including those the plaintiff claims to have visited.  (Declaration of John Matherson ("Matherson Decl.")

¶¶ 4, 6.)  NYU's records are consistent with the plaintiff's first iteration of events and contradict the latter.  NYU's records show ***only two*** swipe access attempts by the plaintiff, both during orientation in August 2019.  (Ex. 46; *see also* Matherson Decl. ¶ 18.)  The plaintiff claimed that her lack of swipe activity was because she lost her NYU ID card early in the Fall 2019 semester and that she was able to access the Manhattan campus "many times" without showing her ID. (García, 62:16-63:23; 99:6-25.)  She further claimed that friends let her into buildings or she told NYU Campus Safety Officers she "really needed to get in." (*Id.*)  NYU's Campus Safety Officers, however, are trained to enforce NYU policy, which requires them to direct students without NYU IDs to the card office to obtain a day pass after verification of their status.  (Matherson Decl. ¶ 14; Exs. 47-49.)  Campus Safety Officers do not permit students without an ID to enter buildings, nor do they allow students to "vouch" for others.  (Matherson Decl. ¶ 15; Ex. 47.)  The plaintiff never reported her NYU ID as lost, as required by NYU policy.  (Matherson Decl.  ¶ 19; Ex 49.)

Juxtaposing the plaintiff's testimony with NYU's records reveals other inconsistencies:

| The Plaintiff's Testimony | NYU's Records |
|---|---|
| The plaintiff testified that despite electing to attend NYU Silver in Rockland because she "wouldn't have to drive two hours . . . and find parking" (García, 54:7-10), she claimed she often drove to the NYC campus to use the computer labs and to print documents (*id.* 74:5-75:11; 85:18-86:1; 311:20-315:9). | The computer labs located at NYU's NYC campus can only be accessed by tapping an NYU ID.  (Declaration of Jorge Najera-Ordonez ("Najera-Ordonez Decl.") at ¶ 5-7.) There is no record of the plaintiff ever using her NYU ID to access a computer lab on the NYC campus.  (*See* Exs. 46, 50.) To print documents at NYU's NYC campus, students must input their Net ID on the computer they are using to print.  (Najera-Ordonez Decl. at ¶ 12-13.)  NYU's records do not reflect any transactions by the plaintiff printing any documents.  (*Id.* at ¶ 14.) |
| The plaintiff testified that she attended events held by the Wasserman Center at the NYC campus (García, 60:12-19; 101:1-102:12; 112:24-113:15.) and that there were no professional development events held at | NYU's records show that she did not attend any events Wasserman hosted during the entire time she was enrolled at NYU.  (Ex. 54.) NYU Silver's records show that the plaintiff attended a career development event it hosted in November 2019 at the Rockland County |

9

| The Plaintiff's Testimony | NYU's Records |
|---|---|
| the Rockland Campus (*id.* 101:17-19). | Campus.  (Decl. of Sooah Kwak ¶ 6.) |
| The plaintiff testified that she went to a meditation class sponsored by Spiritual Life at the NYC campus once or twice during the Fall 2019 semester.  (García, 95:21-96:6; 97:5-8; 125:24-126:23.) | Spiritual Life maintains student attendance records as part of the regular course of its business. (Carter Decl. ¶ 6.) Spiritual Life has no record of the plaintiff attending an in-person meditation class.  (*Id.* ¶ 6., Ex. 51.) |
| The plaintiff testified that she went to the Kimmel Center for University Life ("Kimmel") at the NYC campus "many times." (García, 134:24-135:24.) | To access Kimmel, students must swipe their NYU ID at turnstiles.  (Matherson Decl. ¶ 7.) There is no record of the plaintiff ever using her NYU ID to access Kimmel.  (*See* Ex. 46.) |
| The plaintiff testified that she studied and printed documents at the library at NYU's NYC campus, although she could not remember the name of the library or whether it had more than one level. (García, 86:23-88:1.) | The primary library at NYU's Manhattan campus, the Bobst Library, has turnstiles located on the first floor overseen by Campus Safety Officers.  (Matherson Decl. ¶ 8.)  There is no record of the plaintiff ever using her NYU ID to access Bobst.  (*See* Ex. 46). |
| The plaintiff testified that she completed schoolwork in the Bookstore in "a side of the bookstore that was for people to sit down and things like that."  (García, 86:13-18.) | Although there are a few couches in the Bookstore where customers can wait, there is no study space available in the Bookstore. (Moore Decl. ¶ 10.)  The Bookstore's records also do not reflect any purchases or rentals by the plaintiff.  (*Id.* ¶ 9.) |
| The plaintiff testified that she attended "many" events put on by various NYU groups at the NYC campus during the Fall 2019 semester. (García, 61:3-22; 64:4-12; 71:20-72:7; 126:24-127:20). | The plaintiff only used her NYU ID to attempt to access a building on NYU's NYC campus during orientation.  (*See* Ex. 46.)  This testimony also directly contradicts her sworn interrogatory responses.  (Exs. 43, 45.) |

Unlike NYU, the plaintiff has produced no documents that support her version of events. In any event, there were numerous facilities and services the plaintiff testified that she did not use (or remember using) pre-Covid, including: working out at the fitness facilities; IT; the SHC; Skirball Center; Grey Art Gallery; Campus Media services; the Television Center; transportation services; the StudentLink Center; International Student Services; the NYUCard or Campus Cash; the Torch Club; Mail Services; and NYU Press. (García, 95:15-20; 97:21-98:6; 109:18-25; 112:3-23; 132:15-134:10; 136:3-138:3; 139:25-140:9; 163:13-17.)  The plaintiff's supplemental interrogatory responses changed her story yet again.  (Ex. 45.)

### 2. Conflicting Facts Regarding the Plaintiff's Purported Use of NYU Services During the Spring 2020 Semester.

The plaintiff testified that she attempted to access two NYU services and she allegedly could not use them due to Covid.  Once again, however, NYU's records contradict her testimony (which actually concedes the services were open and operating during the Spring 2020 semester):

| The Plaintiff's Testimony | NYU's Records |
| --- | --- |
| | |
| The plaintiff testified that she called the Wasserman Center during the Spring 2020 semester to get help with her resume and spoke with someone, who then did not call her back.  (García, 118:3-121:16.) | Wasserman's records reflect that the plaintiff did not contact or make an appointment with Wasserman at any time during her enrollment at NYU.  (*See* Ex. 54).  NYU's phone records also do not reflect any such calls she made to Wasserman.  (Ng Decl. ¶ 11, Ex. 52.) |

And, when asked to produce documents related to services the plaintiff wanted to use in Spring 2020, she admitted that she has none.  (Ex. 55.)

Lastly, several of the services the plaintiff claims were not available to her during the Spring 2020 semester because of Covid were actually not available at Rockland *even during the Fall 2019* semester pre-Covid, and thus their alleged unavailability was not the result of Covid. (Exs. 56-57; García, 80:25-82:2; 103:14-105:24; 150:12-16; 264:18-266:2, 269:22-270:23, 274:9-22; 276:19-277:1).  Even though these services were allegedly not available during the fall, the plaintiff never asked for a refund of the Fall 2019 fees paid.  (*Id.* 105:25-106:10).  The plaintiff

also contends in her supplemental interrogatory responses that she had oral communications with NYU President Andrew Hamilton regarding fees, refunds, and/or access to services (Ex. 45), however the President's Office has no record of her meeting with President Hamilton or attempting to reach him by telephone.  (Declaration of Gina Guadagnino ("Guadagnino Decl.") at ¶¶ 6-7).

### 3.    The Plaintiff Failed to Disclose All of Her Law Firms.

The plaintiff asks the Court to appoint the Anastopoulo firm as class counsel.  (Dkt. No. 37 at 21.)  While not evident from her brief, the plaintiff's engagement letter reveals that she actually is represented by *three firms*.  (Ex. 58.)  At her deposition, the only lawyer that the plaintiff could remember contacting was Blake Abbott, from the Anastopoulo firm.  (García, 66:7-68:22; 283:13-287:20.)  But, her engagement letter (produced after the deposition) is with a different firm, Toptani Law PLLC ("Toptani") (Ex. 58.), and the plaintiff's privilege log (produced after the deposition), which spans the period from April 2020 through February 2022, discloses that every e-mail communication she had prior to the filing of this suit was with Toptani, and did not include Mr. Abbott or the Anastopoulo firm.  (Ex. 59.)

Toptani, in turn, apparently has "associated law firms," "includ[ing] … Morea Schwartz Bradham Friedman & Brown LLP ["Morea Schwartz"] and the Anastopoulo" firm, which will act as "co-counsel." (Ex. 58.)  Morea Schwartz has not appeared in this action.  The plaintiff agreed to pay "the greater of a fee of up to 40% of the recovery … or a lodestar award" to these firms. (*Id.* at 1.)  If the Court does not appoint the plaintiff as lead plaintiff or the firms as lead counsel, "Counsel's representation of Client shall *automatically* terminate." (*Id.* (emphasis added).)

The plaintiff's brief, her declaration, and counsel's declaration do not mention Toptani or Morea Schwartz.  (Dkt. Nos. 40, 40-1, 40-2.)  The plaintiff states that she is "represented by" the Anastopoulo firm; when asked at her deposition whether that statement was complete, she answered, "I'm not sure."  (García, 357:1-16; Dkt. No. 40-1 ¶¶ 6, 19.)

### 4.    The Plaintiff's Discovery Failures

This Court ordered expedited discovery prior to class certification.  (Dkt. No. 28 at 29.)  It ordered the plaintiff to provide discovery responses by February 21, 2022 so that NYU could depose the plaintiff by March 10, 2022.  (*Id.*)  She failed to comply.  Counsel let the plaintiff self-collect documents and e-mails, which resulted in her failure even to look for, much less produce, numerous responsive categories of information, including:

- NYU recruitment materials she received or reviewed (García, 46:11-48:6);

- information stored on her phone, including text messages (*id.*, 210:13-20);

- her internet browsing history of NYU websites (*id.*, 249:3-7);

- e-mails she received from NYU regarding the services that NYU continued to provide during the Spring 2020 semester (*id.*, 163:22-25) and that she may have sent to NYU's Health Center that semester (*id.*, 174:5-13); and

- the agenda book she used while enrolled at NYU (*id.*, 65:3-15).

Even though NYU raised the significant deficiencies before her deposition and counsel agreed to rectify them, not only did they fail to do so but the plaintiff testified that she had no memory of making any effort to collect additional information or documents.  (*Id.*, 250:24-251:12; Ex 60.)

The plaintiff's discovery failures ultimately forced NYU to ask the Court to adjourn the class certification opposition deadline and refer the discovery issues to Magistrate Judge Aaron, who, during an almost two-hour hearing, ordered the plaintiff to conduct a "diligent" search and (1) "make a representation to Defendant that that she has produced all responsive emails within her possession, custody or control,"[1] and (2) produce her phone records, browsing history, and supplemental interrogatory answers, among other things.  (Dkt. No. 45.)

---

[1] She has never actually made that representation; instead, two days after her initial responses, she provided a verification page that purports to have been made by the due date and states only that she certifies her responses are in compliance with the Court's order.  (Ex. 55.)

She did not fully comply with that order either.  At her resumed deposition, the plaintiff testified that:  she did not know what "diligent" means (García, 334:1-24), she took no steps to preserve her phone records or browsing history and now she cannot obtain them, and she never even tried to find her browsing history on her phone (*id.*, 336:17-337:19; 338:18-340:5; 340:6-9; 341:23-342:10).  In her supplemental interrogatory answers, the plaintiff did not actually provide "the substance" of her conversations, as ordered.  (Ex. 45.)  Ultimately, the plaintiff produced over 90% of her documents *after* the Court's discovery deadline.  (Gordon Decl. ¶ 3.)

Finally, during her deposition, the plaintiff repeatedly refused to answer questions.  For example, when asked whether she looked on the NYU website to see if fees were nonrefundable, she initially answered, "I'm not going to answer that."  (García, 39:25-40:4; *see also* 240:24-241:5; 297:15-24; 353:19-22; 301:16-303:3; 313:17-24; 356:21-25.)

### 5.    The Plaintiff's and Counsel's Bad Faith Filing

This Court already held that the Complaint "qualifies as a bad faith pleading" and noted that "[t]he plaintiff … was never enrolled at NYU's New York City Campus … a fact that the Complaint omits."  (Dkt. No. 28 at 6, 18.)  Discovery established that on April 25, 2020 (more than one year before she filed this case), the plaintiff forwarded to Edward Toptani a collection of e-mails, including one she received from her "Rockland County Campus" Coordinator, which was addressed to the "Rockland Community."  (Ex. 61.)  The implication therefore is that the plaintiff's counsel knew that she was enrolled at the Rockland, not NYC, campus.  When asked at her deposition to confirm that fact, the plaintiff initially agreed, then disagreed, then was instructed not to answer the question.  (García, 294:24-295:16.)

The complaint also fails to explain that the plaintiff graduated in Spring 2020, which is information that the plaintiff's counsel easily could have ascertained from their client or a quick internet search.  (See Ex. 62.)  Nevertheless, the Complaint asserts that "*[a]t all relevant times,*

[she] was enrolled as a full-time student at Defendant's University" and it seeks forward-looking injunctive relief.  (Compl., Dkt. No. 4 ¶ 14 (emphasis added); *see also id.* ¶ 10).

**ARGUMENT**

Certification is appropriate only where, after a "rigorous analysis," the Court determines that Rule 23's requirements are satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  "[I]t 'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . .'  Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'"  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citations omitted).  Here, the plaintiff seeks to certify a class of "All persons whom paid fees for or on behalf of students enrolled at [NYU] who were charged fees for services, facilities, resources, events, and/or activities for the Spring 2020 Semester that were not provided in whole or in part."  (Pl.'s Br. Class Cert. ("Br."), Dkt. No. 37 at 7-8.)  That effort fails.

## I.     THE PROPOSED CLASS IS NOT ASCERTAINABLE.

The Second Circuit has held that to be ascertainable, the putative class must be "defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).  Here, the proposed class fails that requirement.  *See, e.g.*, *Nypl v. J.P. Morgan Chase & Co.*, 2022 WL 819771, at *10 (S.D.N.Y. Mar. 18, 2022) (denying class certification where plaintiff "offered no means to determine class membership based on common evidence or in some other administratively feasible way"); *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 65 (S.D.N.Y. 2020) (denying class certification where "individual analysis of each class member's transactions would be required to determine whether the purchaser qualified for class membership"); *Evans v. Brigham Young Univ.*, 2022 WL 596862, at *4 (D. Utah Feb. 28, 2022) (same).

*Evans* is a case against a university seeking fees (and tuition) after the transition to remote

learning due to Covid.  There, like here, the plaintiff's proposed class is all "payors" of the fees.  There, like here, the plaintiff stated the number of students enrolled.  *Id.* at *3.  The Court denied class certification, holding that the plaintiff "ha[d] not identified any ascertainable number of individuals who paid."  *Id.* at *3.  The university's records only "show[ed] where tuition was paid by loan, scholarship, or grant, but its records d[id] not reflect whether the student or a third party paid the tuition."  *Id.*  As a result, the plaintiff "fail[ed] to demonstrate that his proposed class can be ascertained by 'objective criteria.'"  *Id.* at *4.  The class was not administratively feasible because "the Court would have to individually inquire into all 33,000 BYU students enrolled . . . to determine who paid tuition—the student or a third party."  *Id.*

The same result follows here.  The plaintiff claims that the class is ascertainable because it "contains approximately 50,000 students . . . all of whom either enrolled and paid fees, or paid fees on behalf of a student enrolled at NYU."  (Br. 8.)  But NYU, like BYU, cannot categorically – or in some instances, perhaps ever – determine whether fees were paid by the student, a family member, or someone else.  (Bonano Decl. ¶ 11.)  NYU maintains account statements for each individual student, which would reflect the amount billed and funds credited toward their bill, where applicable.  (*Id.*)  NYU's account statements, however, do not specify whether the student versus a parent or other third party paid.  (*Id.*)  NYU's records can only determine whether tuition and fees were paid using certain financial aid or an employer through special arrangement.  (*Id.*)  For the remaining students, there is no mechanism other than manual, individualized, student-by-student review to determine how financial aid awards were applied, whether there were any credits to the account, and whether any records exist that would specify the form of payment and who made it.  (*Id.*)  After all that, there still may be no ready way to determine who paid.  (*Id.*)  One would need to take discovery from and obtain the testimony of all of those individuals.  As a result,

there are no "objective criteria," and it is not administratively feasible because "the Court would have to individually inquire" into tens of thousands of student records to see if it can determine what was paid and by whom.  As a result, the putative class is not ascertainable.

## II.     THE PLAINTIFF CANNOT SATISFY RULE 23(A).

"Plaintiff bears the burden of showing that Rule 23's requirements are satisfied by at least a preponderance of the evidence."  *In re Allergan PLC Sec. Litig.,* 2020 WL 5796763, at *5 (S.D.N.Y. Sept. 29, 2020) (McMahon, J.).

### A.     Commonality And Typicality Are Lacking.

The commonality and typicality requirements "'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be firmly and adequately protected in their absence.'"  *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 353-54 (E.D.N.Y. 2013) (citation omitted).  They often "tend[] to merge with" one another.  *Id.* at 354.  The plaintiff satisfies neither.

#### 1.     Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart*, 564 U.S. at 349-50 (citation omitted).  "What matters to class certification . . . is not the raising of common "questions" – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* (citation omitted).  In *Shiflett v. Viagogo Entertainment Inc.*, the plaintiff challenged the sufficiency of a refund for a cancelled event.  2021 WL 4948144 (M.D. Fla. July 16, 2021).  The Court declined to certify the proposed class, finding commonality and typicality were not met because "it [was] entirely unclear whether the class members suffered the same injury[.]" *Id.* at *5.  Rather, individual inquiry would be required to determine whether each was injured, given the refunds.  *Id.* at *6; *see also Martin v. JTH Tax, Inc.*, 2013 WL 442425, at *6

(D.S.C. Feb. 5, 2013) (commonality lacking when "there are a wide variety of possible injuries" or "no injury").

So too here.  Here, one question is "whether the amount already refunded by NYU is 'sufficient' to redress [plaintiffs'] lack of access to the various activities and services covered by [their] student fees." (Dkt. No. 28 at 20.)  This question cannot be answered with common proof. In addition to R&S Fees, NYU charged more than 60 different school- and course-based fees, all for different purposes.  (Pianka Decl. ¶ 4.)  Some students pay fees that others do not.  (Bonano Decl. ¶ 7.)  For example, the plaintiff paid the Social Work R&S Fee and Art Supplies Fee; others did not.  (García, 222:3-24; Ex. 6.)  Some students received refunds of class- and school-based fees; others did not.  (Pianka Decl. ¶ 5-7.)  To determine whether those refunds were sufficient, or if any other school- or course-based fees should be refunded, the Court would have to review each individual fee and determine whether the associated services, supplies, or equipment were provided.  Different students, moreover, availed themselves of different services, facilities, and events than others, and different students made different use of the plethora of remote options provided to them.  Students who enrolled in online instruction were largely *charged the same R&S Fees*.  As such, the plaintiff's unsupported assertion that all students were "uniformly impacted" (Dkt. No. 37 at 9-10) is flat wrong.  The plaintiff does not, and cannot, establish through common proof that the entire class "suffered the same injury," *Pagan v. Abbott Labs., Inc.*, 287 F.RD. 139, 148-49 (E.D.N.Y. 2012), and that an issue "central to the validity" of each putative class member's claim can be "resolve[d] . . . in one stroke," *Wal-Mart*, 564 U.S. at 350.

In an attempt to show commonality, the plaintiff claims that NYU's decision to transition to remote learning was uniform across all campuses and for all students (which is actually not

18

true).[2]  (Dkt. No. 37 at 13.)  But the only "common question" the plaintiff points to is "whether NYU breached contracts when it failed to provide access to facilities and services already paid for." (*Id*. at 9.)  Because this "common question" is nothing more than a recitation of the plaintiff's legal claim, it is precisely the type of recitation the Supreme Court has rejected as insufficient. *Wal-mart*, 564 U.S. at 350-351.  Commonality "'does not mean merely that [the putative class] have all suffered a violation of the same provision of law.'"  *Taylor v. Zucker*, 2015 WL 4560739, at *8 (S.D.N.Y. July 27, 2015) (McMahon, J.) (quoting *Wal-mart*, 564 U.S. at 350); *Oakley v. Verizon Comm'ns, Inc.,* 2012 WL 335657, at *10 (S.D.N.Y. Feb. 1, 2012) (McMahon, J.) (same). Thus, there are no common answers.

## 2.     Typicality

A plaintiff seeking class certification must demonstrate that her claims are typical of other potential class members' claims.  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  Here, the plaintiff's claim is not typical of the class she seeks to represent for three reasons.

First, the plaintiff is atypical because she was not enrolled at the NYC campus, but at Rockland.  She was one of only 88 students there.  (Heckman Decl. ¶ 7.)  Her experience as only an occasional visitor (if at all) at the NYC campus is very different than students enrolled on that campus. *See Rambarran v. Dynamic Airways, LLC*, 2015 WL 4523222, at *8 (S.D.N.Y. July 27, 2015).  Second, and relatedly, many of the services that the plaintiff perceived to be lacking, such as the library, the gym, the ability to print documents, and the availability of meeting rooms, were

---

[2] Different campuses at different locations across the world were forced to transition to remote learning at different times.  Students at NYU locations abroad have circumstances and experiences very different from the plaintiff's experience in Rockland and the putative class should not encompass those students.  Indeed, there are no allegations whatsoever in the complaint about the pandemic experiences of students studying at any of NYU's global sites, which differed considerably even between sites, and thus these students must be excluded from any class.

all aspects of the Rockland campus that she complained about *during the Fall 2019* semester and thus their alleged unavailability was not the result of Covid.  (*See* Ex. 57; García, 80:25-82:2; 103:14-105:24; 150:12-16; 264:18-266:2, 269:22-270:23, 274:9-22; 276:19-277:1.)

Finally, the plaintiff did not use many of the services and facilities that she contends were covered by her student fees either before or after Covid.  (*See* Facts Section B).  This Court explained that "facts relating to the use that Plaintiff herself made of those activities and facilities during the portion of the semester when they were open and available to her" informs whether she was injured and "whether she is an appropriate class representative." (Dkt. No. 28 at 20, 9).  *See Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006) (claims not typical because the plaintiff "was not harmed by the [conduct] he alleges to have injured the class.").

## III.   THE PLAINTIFF IS AN INADEQUATE CLASS REPRESENTATIVE AND PROPOSED CLASS COUNSEL IS SIMILARLY INADEQUATE.

The plaintiff fails to demonstrate that she "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[C]ourts consider whether (1) plaintiff's interests are antagonistic to those of the class, and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."  *In re Allergan*, 2020 WL 5796763, at *5.  "Class certification may be denied . . . where the proposed class representative is 'unwilling or unable to protect the interests of the class against the possibly competing interests of the attorneys.'"  *Id.* at *6. (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 560 (2d Cir. 2000)).

The plaintiff must also demonstrate "that 'class counsel is qualified, experienced and generally able to conduct the litigation.'"  *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (citation omitted).  "Because class counsel seeks to determine the rights of absent putative class members, 'a court must carefully scrutinize the adequacy of representation' . . . ."  *Kingsepp v. Wesleyan Univ.*, 142 F.R.D. 597, 602-03 (S.D.N.Y. 1992) (citation omitted).  "[T]he Court may

consider the honesty and integrity of the putative class counsels, as they will stand in a fiduciary relationship with the class." *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010).  And, "[i]n cases where the class representative's understanding of the case is minimal, counsel's adequacy takes on even greater importance. . . . If the representative is manifestly unable to supervise class counsel, a court must have absolute confidence in counsel's competence and loyalty to the class." *Kulig v. Midland Funding, LLC*, 2014 WL 6769741, at *4 (S.D.N.Y. Nov. 20, 2014).

The plaintiff and proposed class counsel are inadequate here because: (1) the plaintiff has a conflict; (2) they acted in bad faith; (3) the plaintiff lacks credibility; (4) the plaintiff and her counsel flouted discovery obligations; and (5) counsel lacks the requisite experience.

### A.    The Plaintiff Has a Substantial Conflict with the Class.

"'The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class.'"  *Fishon v. Peloton Interactive, Inc.*, 2022 WL 179771, at *10 (S.D.N.Y. Jan. 19, 2022) (citation omitted) (denying certification).  "A key element in the determination … is the relationship between the class representative and class counsel."  *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010).  Courts routinely hold that a named plaintiff is inadequate if she has an undisclosed relationship with a law firm.  *See*, *e.g.*, *In re Allergan*, 2020 WL 5796763, at *6 (denying certification); *In re IMAX Sec. Litig.*, 272 F.R.D. at 155-57 (same); *In re Internap Network Servs. Corp. Sec. Litig.,* 2012 WL 12878579, at *6 (N.D. Ga. Aug. 23, 2012) (same).  In *In re Internap*, a named plaintiff entered into a contingency fee arrangement, which permitted his lawyer to "associate with other co-counsel as he deem[ed] appropriate."  *Id.* at *5.  The lawyer engaged a second firm that had "not sought approval by the court to represent the class nor ha[d] any of its attorneys appeared in [the] case."  *Id.*  This created "concerns about the possibility of conflict" and "the court ha[d] no way of discerning how any proceeds from a potential settlement

or victory for Plaintiffs would be distributed among all the different attorneys and what effect that would have on the class." *Id*. at *6; *see also In re IMAX*, 272 F.R.D. at 156 (lead plaintiff "never disclosed" that it was "also represented by another attorney"); *In re Allergan*, 2020 WL 5796763, at *7 (lead plaintiff inadequate due to "secret" agreement with a second firm, which "placed the interests of counsel ahead of those of the class").

The same concerns exist here.  The plaintiff fails to mention to the Court that the firm she seeks to appoint as sole class counsel, the Anastopoulo firm, is not her only counsel, and not the only firm that she has agreed to pay "the greater of a fee of up to 40% of the recovery … or a lodestar award" if she is successful in this case.  (Facts Section D (3).)  And this agreement includes Morea Schwartz, whose role is entirely unclear as it has never appeared in this case.  Moreover, the plaintiff's agreement with Toptani says that if the firms are not appointed lead counsel, "Counsel's representation of Client shall *automatically* terminate," yet she has not requested that two of those firms be so appointed.  (Ex. 58 (emphasis added).)

The plaintiff's representation by multiple firms is even more concerning because she did not disclose their existence in the brief, her declaration, or Mr. Willey's declaration, and because there is a serious disconnect between the plaintiff's testimony regarding who is her counsel and what the engagement letter and the privilege log reveal.  (Facts Section D (3).)  In *In re Synovus Financial Corp.*, the plaintiff had an engagement letter with two firms, yet her court declaration "describe[d] a 'liaison' role" only for one.  2013 WL 12126755, at *9 (N.D. Ga. Mar. 7, 2013).  The Court found this inconsistency "raised … questions" and ultimately held that the proposed class representative was inadequate.  *Id*.  The questions here abound, and defeat class certification.

### B.     The Plaintiff and Her Counsel Acted in Bad Faith.

This Court already held that the Complaint "qualifies as a bad faith pleading."  (Dkt. No. 28 at 18.)  A "bad faith" filing is "presented for any improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation." *Amorosa v. Ernst & Young LLP*,

2010 WL 245553, at *8 (McMahon, J.) (S.D.N.Y. Jan. 20, 2010).  As the Court explained:

> [w]hat the Complaint does not plead is potentially as significant as what it does.
> From NYU's motion, we learn that Plaintiff did not attend NYU's New York City
> campus but was a graduate student in social work at its Rockland County campus,
> some 35 miles North of Washington Square and on the other side of the Hudson
> River.

(Dkt. No. 28 at 7.)   As a result, this Court warned that the bad faith pleading could have

"implications for [the plaintiff's] quest to represent a class" and that "[a]dequacy of representation

is very much an issue in the opinion of the [C]ourt."  (*Id.* at 18, 29-30.)

   "When class counsel have demonstrated a lack of integrity, a court can have no confidence

that they will act as conscientious fiduciaries of the class." *Creative Montessori Learning Ctrs. v.

Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) (overturning certification).   Counsel are

routinely held to be inadequate when they misstate information to the Court.  *See, e.g.*, *id.* (counsel

inadequate); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 593 (7th Cir. 2011) (counsel

"misrepresented fundamental facts"); *Auscape Int'l v. Nat'l Geo. Enters., Inc.*, 2003 WL

23531750, at *6 (S.D.N.Y. July 25, 2003) (counsel was "misleading"); *Powell v. Carey Int'l, Inc.*,

2006 WL 4562105, at *5 (S.D. Fla. Mar. 27, 2006) (counsel's assertions that "were submitted in

bad faith and for an improper purpose" prevented adequacy).

   For example, in *Askew v. Southern Pan Employee Stock Ownership Plan*, the Court held

that counsel violated Rule 11 by "making factual contentions that lack[ed] evidentiary support."

2019 WL 12536148, at *11 (N.D. Ga. June 27, 2019).  The Court "ha[d] serious reservations"

whether a "class could be certified because . . . proposed class counsel may be inadequate."  *Id.* at

*12.   "Where proposed class counsel do not follow the rules of the court, for example, by …

violating Rule 11, they 'have not met the demanding standard of quality required to represent

absent class members.'"  *Id.* at *13 (citation omitted); *see also Vincent v. Money Store*, 304 F.R.D.

438, 445 (S.D.N.Y 2015) (adequacy not met where prior cases dismissed as "bad faith filings").

Here, both the plaintiff and her counsel knew that she was enrolled at Rockland – not the NYC campus – yet failed to disclose this fact.  (Facts Section D (5).)  Similarly, the plaintiff and her counsel knew or should have known that she had graduated, yet they indicated she had been enrolled at NYU at "all relevant times."  (Dkt. No. 28 at 11-13.)  And NYU apprised the plaintiff and her counsel of certain of these misstatements in a Rule 11 letter, but they chose to pursue the case anyway.  (Ex. 64.)  They cannot act as fiduciaries here.

### C.   The Plaintiff Lacks Credibility.

 "[C]ourts may consider the honesty and trustworthiness of the named plaintiff." *Savino v. Comput. Credit*, 164 F.3d 81, 87 (2d Cir. 1998).  "[T]he inquiry . . . into the representative's personal qualities is . . . an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Friedman-Katz,* 270 F.R.D. at 160 (citation omitted).  In *Savino*, the Second Circuit affirmed denial of class certification where the plaintiff repeatedly changed his position on a key factual issue that formed the very basis of the lawsuit. 164 F.3d at 87.  The Court held such discrepancies would "create serious concerns as to his credibility at any trial." *Id*.; *see also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 95-97 (S.D.N.Y. 2010) (finding plaintiff inadequate representative where deposition testimony conflicted with complaint), *aff'd*, 531 F. App'x 93 (2d Cir. 2013); *Friedman-Katz*, 270 F.R.D. at 159-60 (plaintiff's material omissions and misstatements such that "credibility of [plaintiff] will become the focus of cross-examination at trial, impeding her ability to effectively represent the class"); *Fishon*, 2022 WL 179771, at \*11, \*12 (plaintiff "gave at best misleading testimony" and his "evasive and inconsistent testimony . . . 'creates serious concerns'") (citation omitted).

Here, too, the plaintiff's testimony raises concerns regarding her credibility.  As set forth in Facts Section D, the plaintiff's deposition testimony defies credulity, lacks evidentiary support,

contradicts NYU's contemporaneous records and her prior sworn Interrogatory Responses, and demonstrates that she has, at best, "tailored aspects of her memory to fit the narrative of this action," *Bohn v. Pharmavite, LLC*, 2013 WL 4517895, at *2 (C.D. Cal Aug. 7, 2013), and at worst, invented parts of her testimony.  For example, she has offered very different versions of how many times, and for what purpose, she visited the NYC campus.  First, it was just for orientation – a narrative consistent with NYU's swipe records (Ex. 43 at 7; Matherson Decl. ¶¶ 18, 21.)  But then, during her deposition, the plaintiff claimed that she attended "more than ten" events in NYC during the Fall 2019 semester.  (García, 61:23-62:6.)  Not only is this testimony suspect because it contradicted her prior answer, and is unsupported by NYU's records, but the plaintiff testified that she "chose to go to Rockland," in part because "it had a lot of parking" and she "wouldn't have to drive . . . an hour, and find parking" in NYC.  (García*, 20:25; 54:7-10; 50:4.)  At the same time, she wants the Court to believe that she would often drive to the NYC campus simply to do homework and to print documents (*id.*, 74:5-75:11) – despite the fact she could print at her internship and it would take her "45 minutes to an hour" each way to get to NYC, she would have had to pay a toll each time, and pay for gas, and NYU has no record of her ever visiting the campus after orientation, much less printing anything, nor of swiping through turnstiles at, for example, the main library or main student center.  (*id.* 54:17-23; 83:5-9; 85:14-17; 107:11-13; Ex. 46; Matherson Decl. ¶ 18; Najera-Ordonez Decl. at ¶¶ 10-14).  When asked which version of events was true, the plaintiff at one point stated, "I'm not answering" and then struggled to provide a coherent response.  (García, 311:20-315:9.)  *This is just one example*; the plaintiff's testimony was inconsistent with NYU's records in significant ways.  (Facts Section D.)

### D.    The Plaintiff and Her Counsel Flouted Her Discovery Obligations.

The plaintiff's and counsel's conduct in discovery evidenced a disregard for her responsibilities as class representative.  "One who will not comply wholeheartedly and fully with

the discovery requirements . . . is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted." *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976). Named plaintiffs must comply with their "discovery obligations and failure to do so *strongly intimates* that the class representation is inadequate." *McDaniel v. Cnty. of Schenectady*, 2005 WL 1745566, at *3 (N.D.N.Y July 21, 2005) (emphasis added); *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) ("[P]laintiff's failure to fully comply with reasonable discovery requests . . . indicate[s] that he is not suitable. . . ."); *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981) ("[F]ailure to comply with proper discovery inquiry may be considered. . . ."), *aff'd*, 702 F.2d 400 (2d Cir. 1983). These failures are also properly considered against counsel. *See*, *e.g.*, *Auscape*, 2003 WL 23531750, at *6, *8 (counsel inadequate); *Quinonez v. Pharm. Specialties, Inc.*, 2017 WL 4769436 at *3 (C.D. Cal. Aug. 10, 2017) (counsel "obstructed 'basic efforts to inquire into Plaintiff's adequacy'"). Here, the repeated discovery violations renders both inadequate. (*See* Facts Section D (4)).

### E.   The Proposed Class Counsel Lacks Class Action Experience.

Compounding these issues is the Anastopoulo firm's lack of experience prosecuting class actions. The plaintiff must demonstrate "that 'class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Auscape*, at *4 (citation omitted). The Court's analysis includes "examin[ing] counsel's competence displayed by present performance." *Id.* (citation omitted). In *Sweet v. Pfizer*, the Court denied certification after finding the proposed class counsel inadequate. 232 F.R.D. 360, 370 (C.D. Cal. 2005). Counsel's "lack [of] experience with class actions," coupled with the counsel's performance showed "a failure to comply with the federal rules." *Id.*; *see also Calvo v. City of N.Y.*, 2018 WL 1633565, at *6 (S.D.N.Y. April. 2, 2018) (concerns about counsel who "misrepresent[ed] … their experience with class actions, which … is actually quite limited" "might have been a standalone basis to decline to certify").

Here, Mr. Willey's declaration is noticeably absent of class action experience before he and his firm filed more than 30 cases against universities as a result of the pandemic. And, while Mr. Willey asserts that he or his firm has "been named as lead or co-lead counsel" in ten class actions (Dkt. No. 37, ¶ 5), he fails to inform this Court that some of them were not contested and in each matter, the firm is working with another law firm. From our research, it appears that Mr. Willey has never been named sole class counsel in his two years pursuing class actions.

Further, despite the voluminous discovery requests they served on NYU, the firm's motion for class certification does not attach a single document that NYU produced, but relies entirely on the plaintiff's declaration (paragraphs of which were copied and pasted from another case)[3] and **only five** NYU website pages. (*Id.*) There is no attempt to attach evidence demonstrating a common mechanism for establishing injury or damages. (*Id.*) And, while the notice of motion references a subclass, the motion does not reference that subclass or otherwise attempt to demonstrate why it satisfies the requirements of Rule 23. (*See generally* Dkt. No. 36.)

## IV.   THE PLAINTIFF CANNOT SATISFY THE STANDARDS FOR CERTIFICATION UNDER 23(B)(3).

A plaintiff must show (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior." Fed. R. Civ. P. 23(b)(3). Neither requirement of Rule 23(b)(3) is met.

### A.   Individual, Rather Than Common, Issues Predominate.

Rule 23's predominance requirement is designed to ensure that "'proposed classes are

---

[3] In *Evans v. IAC/Interactive Corp.*, "Plaintiffs' counsel 'copied and pasted' numerous paragraphs" of the named plaintiff declarations. 244 F.R.D. 568, 578 (C.D. Cal. 2007). The Court held that counsel was inadequate, in part, because "Counsel's lax approach to the preparation of declarations in a case where they seek to represent hundreds of thousands of people and seek millions of dollars [wa]s simply unacceptable." *Id.* at 579. Here, the same occurred. *Compare* García Decl. ¶ 19 *with* Ex. 63 ¶ 11 (same); *compare* García Decl. ¶ 23 *with* Ex. 63 ¶ 16 (same).

sufficiently cohesive to warrant adjudication by representation.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This requirement is "far more demanding than the Rule 23(a) requirement that common questions of law or fact exist," *Mullaney v. Delta Air Lines, Inc.*, 258 F.R.D. 274, 278 (S.D.N.Y. 2009) (McMahon, J.), and requires "careful scrutiny" of "'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (Roberts, C.J., concurring) (citation omitted). "Where individualized questions permeate the litigation, those 'fatal dissimilarities' among putative class members 'make use of the class-action device inefficient or unfair.'" *Petrobras*, 862 F.3d at 270 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455, 470 (2013).

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods*, 577 U.S. at 453 (citation omitted). The Court has a "duty to take a 'close look' at whether common questions predominate over individualized ones." *Comcast*, 569 U.S. at 34 (quoting *Amchem*, 521 U.S. at 615 (1997)). Here, they do not.

### 1. Individual Issues Predominate Regarding Class Membership.

"Predominance is not satisfied where classes 'require highly individualized determinations of member eligibility." *Marshall v. Hyundai Motor America*, 334 F.R.D. 36, 55 (S.D.N.Y. 2019) (McMahon, J.) (quoting *Petrobras*, 862 F.3d at 268) (denying class certification); *see also Mazzei v. Money Store*, 829 F.3d 260, 272-73 (2d Cir. 2016) (affirming decertification of class); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538-39 (2d Cir. 2016) (vacating order certifying class). Here, numerous individualized determinations are required, including: (1) what fees, if

any, the student was charged; (2) were they paid (Bonano Decl. ¶ 10); (3) who paid them (*id.* at ¶¶ 10-11*; see* Section I); (4) does the payor have standing (*see* Section 2(b), below); (5) were the services, facilities, or activities "provided in whole or in part"; (6) did the individual receive a refund; and, if so, (7) was that refund sufficient (Dkt. No. 37 at 7-8.)

As previously discussed, in *Evans*, another Covid university refund case, the Court found that "[t]o determine whether a particular individual is a member of the class, the Court would have to individually inquire into all 33,000 BYU students enrolled during the Winter 2020 semester to determine who paid tuition—the student or a third party." 2022 WL 596862, at *4. The same individualized inquiries would be required here. (Facts Section A(2).) Because these individualized issues predominate, the class cannot be certified.

### 2.      Individual Issues Predominate Regarding the Contract Claim.

Numerous courts have found predominance lacking in breach of contract cases when "individual inquiries [are] required to determine whether a breach of the contract could be found." *See, e.g., Spagnola*, 264 F.R.D. at 98-99 (denying class certification); *Spread Enters. Inc. v. First Data Merchant Services Corp.*, 298 F.R.D. 54, 74 (E.D.N.Y. 2014) (same). Here, there is no predominance because there are individualized issues: (1) as to what the contract was; (2) of privity and standing; (3) as to breach, injury, and causation; and (4) damages (*see* Section V(A)(4).)

### a.      The Terms of Any Contract is an Individual Issue.

"As applied to contract claims, the predominance inquiry turns, in large measure, on the type of contract at issue and the types of evidence that will be offered to prove its existence and breach." *Wing v. Metro. Life Ins. Co.*, 2007 WL 9814564, at *6, *12 (S.D.N.Y. May 31, 2007) (denying class certification). "[C]lass-wide resolution of contract claims becomes problematic in the absence of form agreements, or where a number of different form agreements are at issue" because "class members must prove the elements of their claim through individualized proof, thus

defeating the judicial efficiencies otherwise achieved through certification." *Id.* at *7.

In *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*, the Court found predominance lacking for a contract claim where the shipments at issue "were governed by various contractual arrangements" and therefore "proof of class members' claims would require individual analysis of the contracts at issue and . . . whether [defendant] breached the contract[.]" 2012 WL 370319, at *6 (W.D.N.Y. Feb. 3, 2012). The Court found that "class certification would require 'mini trials' of the individual claims of all putative class members" and "issues subject to individual proof predominate over the common questions subject to class-wide proof." *Id.*; *see also Auscape*, 2003 WL 23531750, at *11-14 (denying certification where "resolution . . . [would] require a plaintiff-by-plaintiff determination of the contractual rights . . . ."). Likewise, in *Kaczmarek v. International Business Machines Corp.*, plaintiffs claimed breach where computers did not perform as advertised. 186 F.R.D. 307, 309-310 (S.D.N.Y. 1999). The Court found that the predominance requirement was not met in part because there were "no standardized representations" where the representations made in newspaper advertisements, oral representations, flyers, and the like "differ[ed] in content and form." *Id.* at 310-312.

Here too individualized analysis is necessary because there is no standardized representation that was made to the plaintiff and the entire putative class regarding fees. NYU charges different fees depending upon the student's particularized circumstances, such as: whether they are an undergraduate or graduate student, which school they were in, what program within that school, and what classes they took. (Bonano Decl. ¶¶ 6-7.) The admissions process also is decentralized across NYU, and different for undergraduates from graduate students, and varies among graduate programs. (Heckman Decl. ¶ 4.) NYU Silver has a unique graduate admissions process and provides materials tailored to its programs and to the Rockland Campus that differ

markedly from materials provided to students admitted to other programs.  (Heckman Decl. ¶¶ 4-5; Exs. 1-5.)  As a result, the Court would have to analyze, for each of NYU's 50,000 students:

- What statements NYU or its schools, colleges, or programs made in brochures, bulletins, websites, or other publications regarding each fee, which will vary.  (*Id.*).

- Whether any of those statements constituted a specific promise to provide certain services sufficient to state a claim that a contract was breached.

- The additional terms, if any, of each putative class member's contract with NYU, which would likewise vary from student to student.  For instance, with respect to R&S Fees, certain schools, including NYU Silver, describe the fee as "nonreturnable," potentially resulting in a different contractual analysis than for students enrolled in schools who describe the fee differently.  (*See* Exs. 6-16.)

While the plaintiff contends that "all class members were subject to the same contractual agreement," (Dkt. No. 37 at 15), she offers no evidentiary support for this assertion (*see id.*; *see also* García, 38:19-39:3), and it is contrary to the evidence described above.  She also claims NYU has "standardized" payment, application, enrollment, acceptance, and registration procedures. (Dkt. No. 37 at 14-15.)  In support, she points only to a NYU website page that proves the opposite; it states that "[s]ome courses and schools charge additional fees" and then lists some fees that are applicable to some students and not others, such as a "Deferred Payment Plan-Application Fee" and a "Student Health Insurance" fee that "[m]ost students" enroll in.  (*See* Dkt. No. 37-4.)  NYU's records demonstrate that (1) certain students are charged no fees at all (*see* Bonano Decl. ¶¶ 6-7); and (2) the terms of each student's contract with NYU varies.

### b.    Privity and Standing Are Individual Issues.

Questions of privity and standing are also individualized questions that predominate. Because the plaintiff's proposed class includes "all persons whom paid fees … on behalf of students," it includes parents, friends, relatives, employers, financial aid companies, and other payors, who are not in contractual privity with NYU and thus have no valid claims.  Courts repeatedly hold that such persons do not have standing, as the payment of tuition (or fees) alone

"'does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) (citation omitted); *accord, e.g., Rynasko v. N.Y. Univ.*, 2021 WL 1565614, at *3 (S.D.N.Y. Apr. 21, 2021) (dismissing claim; "While Plaintiff maintains that she paid her daughter's tuition, such payment stems from an arrangement between Plaintiff and her daughter, not a contractual relationship between Plaintiff and NYU."); *Fiore v. Univ. of Tampa,* 2021 WL 4925562, at *11 (S.D.N.Y. Oct. 21, 2021) (collecting cases); *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 236-37 (N.D.N.Y. 2021) (dismissing claim); *Bergeron v. Rochester Inst. of Tech.*, 2020 WL 7486682, at *3-4 (W.D.N.Y. Dec. 18, 2020) (same).  As a result, to determine whether each class member has standing, "the fact-finder would have to look at every class member's loan documents to determine who did and did not have a valid claim." *Mazzei*, 829 F.3d at 272.

The same conclusion follows here.  Here, for each of NYU's 50,000 students, the Court would need to determine whether the student or some third party paid because only the student, not the third party, has standing to sue.  To do so would require an individualized student by student analysis and, as explained above and in Section I, even after that analysis, the parties may not be able definitively to establish whether the student or someone else actually paid the fees.

### c.   Breach, Injury, and Causation Are Individual Issues.

The Second Circuit directs that predominance is not met where "it cannot be said that" the class' claims will "prevail or fail in unison." *Petrobras*, 862 F.3d at 273 (citation omitted).  Instead, where there is no class-wide evidence on an issue, "the fact-finder would have to look at every class member's'" unique circumstances "to determine who did and who did not have a valid claim." *Id.* at 274 (citation omitted).  The "predominance analysis must account for such individual questions, particularly when they go to the viability of each class member's claims." *Id.*; *Marshall*, 334 F.R.D. at 57 ("[T]he Court will be required to conduct individualized inquiries to determine

whether class members suffered any injuries *at all* . . . ."); *see also O'Gara v. Countrywide Home Loans, Inc.*, 282 F.R.D. 81, 90 (D. Del. 2012).

In *O'Gara*, the plaintiffs alleged a breach of a standard form contract. *Id.* Observing that "[n]umerous courts have recognized that predominance cannot be satisfied where a court must make a reasonableness determination of individual charges," the Court ruled that, while the contract may have been common and demonstrable on a class wide basis, "breach and damages cannot" because those issues required individualized analysis and "class-member-specific proof." *Id.* "[C]ausation is an essential element of damages in a breach of contract action." *Horowitz v. Nat'l Gas & Elec.*, LLC, 2021 WL 4478622, at *14 (S.D.N.Y. Sept. 30, 2021) (dismissing claim) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52–53 (2d Cir. 2011)).

Here, too, the putative class' claims will not rise and fall in unison. Rather, the Court would need to explore student-specific proof to determine if there was a breach, causation, and resulting harm.[4] NYU departments funded in part by R&S Fees, for example, continued to provide services and activities. (Facts Section B; Exs. 20-38.) Indeed, the plaintiff acknowledged that she did not know whether certain services were provided post-Covid. (García, 146:25-147:6; 160:8-15; 161:5-162:25; 175:12-177:6; 180:7-183:14; 183:15-193:6; 195:11-196:17; 196:18-200:25; 202:4-14; 202:15-203:7.) If services were provided, there is no injury. *Fiore*, 2021 WL 4925562 at *17 (S.D.N.Y. Oct. 21, 2021) (dismissing claims).

Even if there were services that were not provided, the evidence on usage of those services necessarily will "var[y] from member to member." *Tyson Foods*, 136 S. Ct. at 1045. Take, for

---

[4] The plaintiff's proposed class definition is overbroad because it fails to exclude individuals who were not injured. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2208 (2021) (quoting *Tyson Foods*, 577 U.S. at 466); *see also Nypl*, 2022 WL 819771, at *10 (denying class certification).

example, a student who paid an R&S Fee while studying in California and never had any intention ever of using the gym at the NYC campus.  Even if one of the gym facilities was not open during Covid, that student did not suffer any injury caused by NYU.  *See Kempner v. Town of Greenwich*, 249 F.R.D. 15, 18 (D. Conn. 2008) (refusing to certify class that included individuals that "never engaged, nor intended to engage, in" the activity).  Similarly, the named plaintiff testified that she could not remember ever working out at the gym, so she could not have been harmed if it was closed.  (García, 95:15-20.)  Indeed, the plaintiff testified either that she did not use or could not recall using many services and facilities during the Fall 2019 semester.  (*See* Facts Section (D)(2).) Conversely, many services were provided virtually both before and after Covid.  (*Id.*)

Even if there was a service that was not provided, one would then need to conduct a student-by-student inquiry to determine whether the fee was refunded in whole or in part.  After Covid struck, NYU conducted a proactive analysis of all school- and course-based fees and issued full or *pro rata* refunds where appropriate.  (Pianka Decl. ¶5- 7.)  Those individuals who received a refund were not injured and cannot recover.  *Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014) (dismissing claims for lack of actual injury); *Patel v. Univ. of Vt. & State Agric. Coll.*, 2021 WL 1293447, at *1 (D. Vt. Apr. 7, 2021) (dismissing claims).

Here, all the plaintiff proffers as class-wide "common proof" to answer all of these questions are five website pages that show no such thing.  Individual issues predominate.

### 3.    Individual Issues Predominate Regarding Unjust Enrichment.

To prevail on a claim for unjust enrichment under New York law, a plaintiff must establish "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted).  Courts routinely deny motions to certify

unjust enrichment claims. *See, e.g., Weiner v. Snapple Bev. Corp.,* 2010 WL 3119452, at *10–11 (S.D.N.Y. Aug. 5, 2010); *Vaccariello v. XM Satellite Radio,* 295 F.R.D. 62, 68-69 (S.D.N.Y. 2013); *Tropical Sails Corp. v. Yext, Inc.,* 2017 WL 1048086, at * 15, *16 (S.D.N.Y. Mar. 17, 2017) (denying class certification); *Crab House of Douglaston Inc. v. Newsday, Inc.*, 2013 WL 1338894, at *14, *15 (E.D.N.Y. Mar. 29, 2013) (same); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts").

In *Vaccariello*, the plaintiffs challenged the automatic renewal of radio services. 295 F.R.D. at 66. The Court denied class certification because individualized inquiries were necessary to determine (1) whether each individual was actually injured, as some wanted automatic renewal, (2) whether the defendant was unjustly enriched, as it "did not reap an improper benefit" from those who wanted the renewal or continued to listen to the radio, and (3) whether each putative class member had a contract with the defendant such that unjust enrichment was not available. *Id*. at 69, 75-76. In *Weiner*, the Court denied class certification where, in part, the plaintiffs failed to establish how they would prove, on a class-wide basis, that the benefits the putative class members received were "less than what they bargained for." 2010 WL 3119452, at *10–11.

The same result follows here. The plaintiff claims that she "paid fees to NYU 'in expectation of receiving one product' – access to facilities for the entire semester – but was 'provided with a materially different product'" and that NYU's retention of her money was "'unjust under the circumstances.'" (Dkt. No. 28, at 26.) And the Court noted that, "deciding whether NYU (which has already given a partial refund of student fees) was enriched at all, let alone 'unjustly' so, will be no simple matter." (*Id.* at 27.) Indeed, NYU spent millions of dollars in refunds, in financial and emergency aid to students, to increase its internet capacity, to cover

unanticipated costs, and continued paying its faculty and employees. (Pianka Decl. ¶¶ 8, 14.) And, as discussed previously, during Covid NYU managed to continue to provide many of the services for which fees were paid, and already refunded others. (Facts Section B.)

Determining whether NYU was unjustly enriched as to any class member's fees will require a complicated and individualized inquiry into, among other things, whether there was a contract that renders unjust enrichment unavailable, and if so, then the quality and value of the services that NYU provided, the class member's expectations regarding those services, and whether she would even have availed herself of those services. Given these individualized inquiries, the unjust enrichment claim is unsuitable for class treatment.

### 4. The Plaintiff Does Not Establish that Damages Are Capable of Measurement on a Class-wide Basis.

"No damages model, no predominance, no class certification." *In re Aluminum*, 336 F.R.D. at 48 (citation omitted). This Court must conduct a "rigorous analysis" into whether "'plaintiff's damages case [is] consistent with its liability case'" to assess whether common issues predominate. *Comcast*, 569 U.S. at 35. A damages model may not be speculative; a court "must understand, concretely, how plaintiffs propose to reliably evaluate damages." *Sicav v. Wang*, 2015 WL 268855, at *6-*7 (S.D.N.Y. Jan. 21, 2015) (denying class certification). Plaintiffs must do more than "ask that [their expert] be taken at his word" that a reliable damages methodology exists. *Weiner*, 2010 WL 3119452, at *9; *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1750595, at *19 (S.D.N.Y. Apr. 11, 2018) (expert opinion insufficient); *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141 (S.D.N.Y. 2014) (same).

Here, the plaintiff has not identified *any* expert or *any* damages model, let alone calculations that a model would produce. In her interrogatory responses, the plaintiff vaguely sets forth a "basic analysis to determine the class-wide damages" that she said she would "supplement

at the appropriate time": "determining the net revenue collected by the University for the Spring 2020 semester divided by the number of students enrolled for the Spring 2020 semester, further divided by the percentage of days remaining in the Spring 2020 semester when the University ceased in-person instruction and evicted students. The University's mitigation of damages will be calculated into the damages analysis." (Ex. 43.) This "bare-bones" explanation of a damages model is insufficient to support certification, *Royal Park Invs.*, 2018 WL 1750595, at *19, and the plaintiff's promise of a damages model someday plainly does not satisfy *Comcast*, which requires a sound methodology at class certification. Moreover, it raises more questions than it answers: what does she mean by "net revenue"? How is that derived? Does it include revenue from sources other than fees? Which costs are subtracted? Given that NYU continued to fund student services, why is this procedure even applicable?

The plaintiff also does not acknowledge the plethora of individualized issues that damages raise, such as: would the plaintiff have to give back the Covid grant that NYU provided her? What about students whose scholarships paid for the fees at issue? What about those with financial aid? And, there cannot be any serious dispute that students received value from the services that were actually provided. Nor does the plaintiff account for the differences in contract damages versus those recoverable for unjust enrichment. *Compare Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012) with *MyPlayCity, Inc. v. Conduit Ltd.,* 2013 WL 150157, at *2 (S.D.N.Y. Jan. 11, 2013) (McMahon, J.).

## V.    A CLASS ACTION IS NOT SUPERIOR.

Courts consider "the difficulties likely to be encountered in the management of a class action." *Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879, at *27-28 (E.D.N.Y. Feb. 19, 2009). "The greater the number of individual issues, the less likely superiority can be established." *Cohn v. Mass Mut. Life. Ins. Co.*, 189 F.R.D. 209, 219 (D. Conn. 1999) (citation omitted).

Superiority is not met here for two reasons.  First, "the need for mini trials on the resolution of each class member's claims and the applicability of affirmative defenses detracts from the superiority of the class action device."  *Spagnola*, 264 F.R.D. at 99; *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 142 (S.D.N.Y. 2003) (need for mini-trials defeats superiority).  Given the multitude of individualized inquiries relating to liability, a class action here is not superior.[5]

Second, the proposed class is an impermissible "fail-safe" class.  "A fail-safe class requires a court to decide the merits of individual class members' claims to determine class membership."  *Nypl,* 2022 WL 819771, at *9.  The fail-safe class definition "shields the putative class members from receiving an adverse judgment."  *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012) (citation omitted), *aff'd*, 829 F.3d 260 (2d Cir. 2016). "[E]ither the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment."  *Id.*  A fail-safe class is "unfair" since "it prevents an adverse judgment being entered against plaintiffs . . .."  *Id.*

Courts refuse to certify fail-safe classes.  *See, e.g.*, *Nypl*, 2022 WL 819771, at *9-10 (denying certification); *DiDonato v. GC Servs. Ltd. P'ship*, 2021 WL 4219504, at *8 (S.D.N.Y. Sept. 16, 2021) (same); *Bondi v. New Rochelle Hotel Assocs.*, 2018 WL 7246962, at *14 (S.D.N.Y. Dec. 7, 2018), *R. & R. adopted*, 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019) (same); *Spread Enters.* 298 F.R.D. at 69-70.  In *Spread*, the Court held that a proposed class of merchants defined as those who were charged "excessive fees" constituted a fail-safe class.  298 F.R.D. at 69.  Because the fee had to be proven to be "excessive" for inclusion in the class, "class membership would depend on whether or not the Defendants were found liable for overcharging."  *Id.* at 69-70.

The same problem exists here.  The proposed class is "all persons whom paid fees" for

---

[5] The plaintiff claims to be "unaware of any other action or controversy alleging the same relief on behalf of the same class against NYU" (Dkt. No. 37 at 16.) – a surprising claim given NYU pointed out the five other cases, including one appeal, against NYU in its Rule 11 letter.  (Ex. 64.)

services or facilities "that were not provided in whole or in part." (Dkt. No. 37 at 1.)  One cannot

simply observe that there are 50,000 students and assume that they are all part of the class.  Instead,

class membership depends on the merits determination whether NYU failed to provide services or

facilities that it was obligated to provide under the contract.  If a jury determines, as it should, that

NYU provided all the required services and facilities, "there would no longer be any members" of

the class and they would not be bound by that adverse judgment.  *Spread Enters., Inc.*, 298 F.R.D.

at 70.  As such, this is a fail-safe class unsuitable for class treatment.

## VI.    A CLASS CANNOT BE CERTIFIED UNDER RULE 23(B)(2).

Certification under Rule 23(b)(2) is improper because the primary relief sought by the

plaintiff is disgorgement of the fees putative class members paid for the Spring 2020 semester.

The Supreme Court has held that "claims for monetary relief" may not be certified under Rule

23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." *Wal-*

*Mart*, 564 U.S. at 360.  Rule 23(b)(2), moreover, "does not authorize class certification when each

class member would be entitled to an individualized award of monetary damages." *Id.* at 360-61.

In *Nationwide Life Ins. Co. v. Haddock*, the Second Circuit vacated a district court's grant

of class certification under Rule 23(b)(2) where the plaintiff sought: (1) a declaratory judgment;

(2) an injunction; and (3) disgorgement. 460 F. App'x. 26, 28-29 (2d Cir. Feb. 6, 2012).

Certification was improper because if the plaintiffs could prevail, "the district court would then

need to determine the separate monetary recoveries to which individual plaintiffs are entitled from

the funds disgorged," which "would require the type of non-incidental, individualized proceedings

for monetary awards that *Wal-Mart* rejected under Rule 23(b)(2)." *Id*. at 29.

Here, the plaintiff seeks monetary relief, disgorgement, disguised as a request for equitable

relief.  (Compl. ¶¶ 120, 134; prayer for relief.)  If she prevails on liability (which she cannot), the

Court would have to engage in individualized proceedings to determine the amount of disgorged

fees for each putative class member.  Her request for monetary relief, moreover, is not incidental

to her request for declaratory and injunctive relief.  Certification under Rule 23(b)(2) is improper.

## VII.   A CLASS CANNOT BE CERTIFIED UNDER RULE 23(B)(4).

"When appropriate, an action may be brought or maintained as a class action with respect

to particular issues."  Fed. R. Civ. P. 23(c)(4).  Issue certification is inappropriate "'if, despite the

presence of a common issue, certification would not make the case more manageable.'"  *In re*

*MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 351 (S.D.N.Y. 2002) (citation omitted).

The plaintiff seeks certification as to NYU's "liability issues," but then describes them as

"all substantive elements of the Plaintiff's, and proposed Class members', breach of contract and

unjust enrichment claims for tuition and fees."  (Dkt. No. 37 at 18.)  She has not shown that class

certification for purposes of resolving these liability issues would "clearly and meaningfully

advance" this litigation.  *Haag v. Hyundai Motor Am.*, 330 F.R.D. 127, 132 n.3 (W.D.N.Y. 2019).

As articulated in Section IV, individualized, rather than common, issues predominate – issues that

"are themselves liability factors."  *Marshall*, 334 F.R.D. at 61.  With respect to the breach of

contract claim, these issues include whether a contract existed between NYU and each class

member and whether each class member actually paid the fees at issue to NYU, among others.

*See, e.g.*, *Dungan v. Acad at Ivy Ridge*, 344 F. App'x 645, 647-48 (2d Cir. 2009) (affirming denial

of issue certification); *In re Amla Litig.*, 282 F. Supp. 3d 751, 765 (S.D.N.Y. 2017) (denying

certification).  With regard to the unjust enrichment claim, it is well established that "common

questions [of fact] will rarely, if ever, predominate an unjust enrichment claim."  *Vega*, 564 F.3d

at 1274.  Because these issues, as well as damages, "would remain to be adjudicated in hundreds

or even thousands of cases," certification under Rule 23(c)(4) is not appropriate.

## CONCLUSION

For all of the reasons set forth above, class certification should be denied.

Dated: May 9, 2022                            Respectfully submitted,

                                             **DLA PIPER LLP (US)**

                                             */s/ Keara M. Gordon*

                                             Brian S. Kaplan
                                             Keara M. Gordon
                                             Colleen Carey Gulliver
                                             Rachael C. Kessler
                                             1251 Avenue of the Americas
                                             New York, New York 10020-1104
                                             Phone: (212) 335-4500
                                             Facsimile: (212) 335-4501
                                             brian.kaplan@us.dlapiper.com
                                             keara.gordon@us.dlapiper.com
                                             colleen.gulliver@us.dlapiper.com
                                             rachael.kessler@us.dlapiper.com